1

2

3

4

5

Mr. Benjamin Woodhouse
Attorney for Plaintiff
2369 Kronprinsends Gade Ste. #8
Charlotte, VI. 00802
805 478 1958
benjamin.woodhouse@gmail.com
Cal Bar #261361

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mr. Benjamin Woodhouse, A resident of the U.S. Virgin Islands, Havensight Capital L.L.C., A U.S. Virgin Islands corporation.

Plaintiffs,

v.

The United States Government, the Hon. Stanley Blumenfeld Jr., Acting as a Government Official, a California citizen, the Hon. Gary Klausner, the Hon.Fernando Olguin, Acting as a Government Official, the resident of California, the Hon. Manuel Real, Acting as a Government Official, resident of California, the Hon. Otis Wright, Acting as a Government Official, resident of California, Mr. Daniel Beck, Acting as a Government Official, Acting as a Government Official, resident of California, Ms. Traci Wilkison, Acting as a Government Official, resident of California, Mr. David Harris, Acting as a Government Official, resident of California, Ms. Joanne Osinoff, Acting

Case No.: 2:22-cv-00285

Plaintiff's *Complaint*

*Complaint*

1
2
3
4
5
6
7

as a Government Official, and resident
of California and resident of California,
and Hon. Philip Gutierrez, Acting as a
Government Official, and resident of
California.

                    Defendants.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. INTRODUCTION.

The Plaintiff brings an action against the U.S. Government, including Judge Blumenfeld Jr. for engaging in alleged obstruction, citing to criminal conduct, in a defective Minutes Order, and allegedly interfering with Judge Klausen, who is also a named Defendant, here, for obstructing due process and trying to abrogate the right to file a *Complaint* against the U.S. Government. *Exhibit A P. 7 Defective Minutes Order Citing to Plead Felonious Settlement Offers.* This Court should understand that the Federal Court in Los Angeles is now under National Security scrutiny for upholding felonies in a systematic pattern, and patently obstructing justice, in an exceptionally laissez faire manner, the Plaintiff requests that this Court uphold its responsibility to serve the U.S. Government, and not engage in criminal acts. The Court should also be advised that Triple Conflicted Counsel, in 2:21-cv-06372, are also under Counterintelligence National Security review for using U.S. assets, to contravene justice. The content of the Complaint speaks to serious plead and alleged felonies by the Trillion dollar conflicted Defendants, and the U.S. Government, and needs to be adjudicated with the highest sensitivity. There is also no *Res Judicata* for any *Complaint* that is dismissed without an affirmative defensive document from a Party. *Wojciechowski v. Kohlberg Ventures*, *LLC*, No. 17-15966 (9th Cir. 2019).

The Plaintiff, also, will request leave from this Court, to add conflicted Defendants: Gibson Dunn Inc., Meta Verse Inc., Nike Inc., and unconflicted Alphabet Inc. for civil damages for: obstruction of justice, intentional interference with business and economic relations, fraud, due process violations, and material collusion between all Defendants, in contravention of Federal Law, and overall National Security interests.  Specifically, the Federal Court in the matter of *2:21-cv-06372* refused, despite multiple filing requests into the *Court Record*, to produce disseminated discovery in the pre discovery period, committed by Triple Conflicted Counsel, which is a felony.  *18 U.S.C. Section 1519.*  Triple Conflicted Counsel allegedly frequently disseminated white binders filled with illegal depositions, compiled in the pre-discovery period, taking the approach of a neanderthal in a village, as opposed to a proper licensed attorney.  These binders include depositions of Plaintiff's Pepperdine law Classmates, Pepperdine law Administration, and military personnel, in addition to even a rumor about an illegal deposition of a mentally handicapped child, which Plaintiff had assisted.

Also, the U.S. Attorney's office, here, in addition refused to produce a *Complaint,* which was disseminated to them by Triple Conflicted Counsel in the referenced matter, from the stealing of a legal file off of the Plaintiff's computer, and which was materially different from the *Complaint* that was actually filed and produced for the first time.  *18 U.S.C. Section 1030.  Richmark Corp. v. Timber*

2                                    *Complaint*

*Falling Consultants,* 959 F.2d 1468, 1475 (9th Cir. 1992)(Stealing of private records grounds for immediate default).  Also, an obstruction filing is proper, here, to bring, after the issuance of an improper and criminally defective *Order*, as it cited specifically to plead criminal conduct, as the obstruction could be argued to have precluded success of the claims in that original *Complaint.  Exhibit B.  P. 7 Defective Order.  See Karim Panahi v. Los Angeles Police Dept*., 839 F.2d 621 (9th Cir. 1988).

 Moreover, the Plaintiff also alleges that the U.S. Attorney colluded with Triple Conflicted Counsel throughout the case, and possibly with Judicial Officers, both, not of record, and of record.  Such collusion led to the Court failing to adjudicate eleven Motion and Application documents, including a *Motion for a New Trial*, which was opposed 9 days late by Triple Conflicted Counsel.  *2:21-cv-06372 Court Record.  18 U.S.C. Section 1832-4*.  The Court, and the U.S. Attorney's office also failed to take judicial notice of plead felonies, across three instances, a triple conflict, a Motion of over length, three late filings, non admission to the Court on the Triple Conflicted Counsel's first filing, six cases argued by triple conflicted Counsel that did not stand for his position across filings, two alleged perjurious statements, and procedural violations which are too numerous to state in this *Introduction*.  This is despite over four filings, into the record, which required the U.S. Attorney, and the Court, to take judicial notice of

3                                    *Complaint*

the multiple criminal acts plead into the matter, not withstanding the triple conflict, and alleged felonies.  *18 U.S.C. Section 1621.  In Re American Airlines v., 972 F.2d 605 (5th Cir. 1992).  Richmark v.  Id.*

Additionally, all of the plead criminal conduct, three late filings, triple conflict, and procedural violations, along with cases that did not stand for Triple Counsel's position, are best codified in Plaintiff's *Reply* to its *Second Applications* against the U.S. Government, which is attached, as *Exhibit A*.  There are too many errors from the conflicted Defendants filings to individually clutter this *Complaint* with.  In this instance, the *Reply* document, is the Court's best chance to understand the gravitas of the Court's potential lack of capacity, the obstruction, and the total absence of any kind of decency, in affording due process.  *Id.*  We are also unsure whether Gibson Dunn Inc. going into the California Sec. of State's Business registration website and changing its registration, without a filing, was done with the assistance of, either, the U.S. Attorney, or, not, a discovery period, will determine this.  *18 U.S.C. Section 1028.  D.S.P.T. Inc. v. Nahum*, 624 F. 3d 1213 (9th Cir. 2010).  Such a felonious falsification would never happen, in the U.S. Virgin Islands, which is well governed by high integrity Leaders.

Furthermore, if the alleged acts were not sufficient to rise to the level of obstruction, the U.S. Attorney has also failed to take judicial notice of the fact that the Court cited specifically to Triple Conflicted Counsel's felony, in its defective

4                                        *Complaint*

ruling, and while this was raised in a *Motion for a New Trial*, such a *Motion* was not adjudicated as the Court, believed that it could violate due process at will, and play along with Triple Conflicted Counsel's scheme of pleading felonies. *U.S. Constitution*. *Federal Rules of Evidence 408*. No Court can grant a 9 days opposition, after Triple Conflicted Counsel has plead felonies, and interfered with *Applications*, with such a third late filing. This Court bombastically obstructed justice, in its never ending denial of due process. *In re Murchison*, 349 U.S. 133 (1955)(Supreme Court case ruling Judicial disqualification for due process violation).

Moreover, the U.S. Attorney also refused to investigate a $100MM payment for a $20MM house in Malibu, CA. by a Meta Verse Inc. director, while proceedings were ongoing in the Ninth Circuit between the Plaintiff and conflicted Defendants, circumstances around this alleged bribe, lead to serious National Security complications that cannot be released in this public filing. *See filed Joint Report in 2:21-cv-06372*. The U.S. Attorney was also unable to investigate the sending of Gibson Dunn hired people, to pose as U.S. Attorneys, and interfere with the San Luis Obispo, California, Court, in the case involving the Plaintiff and conflicted Defendants. Such an alleged act is beyond brazen and easily confirmed, the U.S. Attorney's lack of investigation, should also be construed by the Court, as an additional act of collusion, in addition to the Office's failure to prosecute the

5                                          *Complaint*

three plead felonies, across multiple filings, into the *Court Record*, in *2:21-cv-06372*.

This *Complaint*, here, does not seek specific performance, rather it believes that the U.S. Government, and the triple conflicted Defendants, in addition to Alphabet Inc., should be financially responsible for their blatant and atavistic respective obstruction, alleged collusion, and engagement in criminal conduct, via coerced Fraud. The Plaintiff requests that the Court, here, dissolve the conflicted Parties in the matter of *2:21-cv-06372*, and other Defendants, in *colloquefacio*, and award 3 trillion U.S. dollars in compensatory and punitive damages, respectively, against each Client. *Combs v. Rockwell Int'l Corp*., 927 F.2d 486, 488 (9th Cir. 1991)(Counsel's interference with evidentiary documents grounds for default and punitive damages). *Waits v. Frito Lay Inc*., 978 F.2d 1093 (9th Cir. 1992).

Such a message will presage that the U.S. Government and other trillion dollar companies, do not attempt again, to end private records, and conflict checks, in Federal Law, via criminal acts, and collusion. When Judicial Officers, and U.S. Attorneys allegedly commence concealing evidence to curry favors with triple conflicted trillion dollar companies, it transforms the legal profession from a grouping of impresarios and dexterous professionals, to a gathering of nothing more than sycophants, and banal banterers. *Res Judicata* is also not applicable, here, because there has been no adjudications on obstruction, which is material to

6                                  *Complaint*

due process and justice.  Furthermore, there were really no adjudications of any kind, anyway, in the reference matter, only a *Defective Order*, with express citation to criminal conduct, and some kind of statement document refusing to adjudicate any Plaintiff's *Motions* and *Applications*, which is counter to what the tenet *res judicata* doctrine stands for, and simply felonious.  *Exhibit B.  P. 7 Defective Order.  Karim Panahi v.*

The Plaintiff also alleges that this Court was prejudiced by the Hon. Marty Tangeman, who oversaw the prior matter, in State Court, involving the Plaintiff and the conflicted Clients, and failed to reveal a conflict, in being family related to Ms. Heather Baker, a Pepperdine Law classmate of the Plaintiff.  We do not have time to waste on inquiries, into why this Judge, "Marty," possess bizarre unfounded prejudices, and pursues corrupting other Courts, against a small business owner.  History will not look back, and appreciate this.  Similarly, when Judge Blumenfeld reviewed Triple Conflicted Counsel's plead felonies into an *Application,* and awarded him $200,000 for filings when he was not admitted, and had already plead other crimes, it invoked a similar emotion for the Plaintiff, as when Mr. Follieri hijacked Pepperdine law school, via force, with the head of Russia's F.S.B.'s daughter as a classmate of the Plaintiff's, and then after saving the World, Fmr. Sen. Rockefeller, refused to introduce the Plaintiff to Toyota Leadership, all situations, beg the question, "Do you know where you are, son?"

7                                      *Complaint*

and "Do you understand the global problems that we could all avoid, with an exhibition of basic sense, instead of unbridled conceited obdurateness?"

I cannot hardly wait for Triple Conflicted Counsel's future late pontifications, on why the Court should encourage his constant plead felonies.  We believe that this Court is unbribed, and that atavistic approaches are not required for the Court to be able to regain its volition, and enforce felonious conduct again, including the concealment of evidence.  Finally, the Court, here, should also re-open all cases involving the Plaintiff, and his company, Havensight Capital L.L.C., and the conflicted Defendants, and Alphabet Inc.  It is the interest of justice for the U.S. Government to explain, why it used military equipment to harass the Plaintiff, in a nexus of discrimination, which now looks even more insipid and virulent, with the Court's recent citation and upholding of three separate plead felonies into the record?  *See Exhibit C.  Attached Complaint for 2:21-cv-06372.*

## II. SUBJECT MATTER OF JURISDICTION.

The Court, here, has subject matter of jurisdiction as the Plaintiff has alleged an action that arises under a Federal Claim, and the U.S. Government is a Defendant.  *18 U.S.C. Section 1001*.  The Parties, here, are also diverse and the controversy concerns more than U.S. $75,000.  *18 U.S.C. Section 1331-2.*

*Complaint*

### III. STATEMENT OF FACTS.

The Plaintiff, here, brought an action against Gibson Dunn Inc., Meta Verse Inc., Nike Inc., and Alphabet Inc., for continued contact of Clients, and Investment Bankers of Plaintiff's company, after feloniously accessing his email, in addition to claims against the U.S. Government, for conscripting the Plaintiff, and taking continued and consistent alleged bribes, in consistently upholding Triple Conflicted Counsel's plead felonies and conflicts, in two cases, in a systematic means, which has caused select Quasi National Security Agency Leaders, and the California Bar to question whether the Federal Court should still be open, and whether it has any independence of any kind.  The action was filed, in *2:21-cv-06372*, on 08/06/2021.  The Triple Conflicted Counsel then attempted to represent three Parties at once, and filed a *Motion to Dismiss*, despite not being admitted to the Court.  The *Motion* was also over length, violated the Judges *Standing Order*, and was eventually replied to late.  *2:21-cv-06372 Court Record*.

Then, the Triple Conflicted Counsel filed a duplicative *Motion*, once being admitted, requested a *Vexatious Motion*, which he would also file a *Reply* late to. In his *Vexatious Motion,* Triple Conflicted Counsel disseminated settlement offers and attorney emails feloniously and his second duplicative *Motion* was over length in addition.  Plaintiff then proceeded to file *Request for Judicial Notices* with

*Complaint*

*Requests for Default* as Alphabet Inc. had failed to show up and defend, none of these were adjudicated.  The Plaintiff then filed a *Motion for Default*, based on Triple Conflicted Counsel's plead felonies, and triple conflict, in addition to procedural violations and the arguments of multiple cases, which Triple Conflicted Counsel posited.  The *Motion* magically disappeared and was also not adjudicated like the *Requests.  Id*.

Further, the Plaintiff showed up to a hearing, on Nov. 12, 2021, and specifically asked the Court if it could turn over disseminated discovery in the pre discovery period that had been disseminated, as Triple Conflicted Counsel was obstructing this fact.  *Hearing Record, Nov. 12th, 2021*.  Such acts are immediate ground for default, independent, of the plead felonies by Triple Conflicted Counsel.  The Court deliberately refused to answer the question, and obstructed Plaintiff, it also later asked the Plaintiff for exact dollar amount in his bank account as of that date, which was illegal and suggested that perhaps the Court was suffering from lack of capacity.

Next, the Court, cited, directly to the settlement offers as the reason for its defective unsigned *Order.  Exhibit B.  P. 7 Defective Court Order, 2:21-cv-06372*. Meanwhile, Triple Conflicted Counsel then proceeded to plead more felonies, in attaching more attorney emails, to his *Application* for attorney fees, despite the plead email takings, actually containing a warning, which states the Federal statue,

10                                    *Complaint*

as evidenced in *the 2:21-cv-06372 Court Record*.  Even the mentally handicapped are capable of reading, do not disseminate warnings which contain Federal Statues, moreover, Triple Conflicted Counsel had already been warned about such felonious offenses, by the Plaintiff, after he feloniously disseminated the settlement offers in the case.

Additionally, the Plaintiff then proceeded to make multiple written requests in emails to the U.S. Attorney's Office, and in legal filings, such as a *Motion for a New Trial*, requesting that the Court take notice of its citation to plead felonies in its defective *Order*, and for it to come forward with the disseminated discovery in the pre-discovery period.  *Decl. Mr. B. Woodhouse*.  The Court can find the exact disclosures document sent to Triple Conflicted Counsel, in addition to disclosure requests to the U.S. Attorney, which is not a privileged attorney email, and germane evidence, attached as *Exhibit D*.  The Plaintiff also made such a request in *Applications*, when a U.S. Attorney, who was not admitted, filed an improper filing, and filed a *Reply* to the *Applications* late.  Triple Conflicted Counsel, also, interfered with these *Applications,* with a 9 days late *Opposition*.  The Court did not come forward with the disseminated discovery and order default, instead it just pretended the *Applications* had not been filed, and failed to adjudicate the *Motion for a New Trial*.  *Court Record*.  Such an act is obstruction per se, as it denies my Client material access to evidence, and also interferes with my personal life and

business, as I do not know who Conflicted Counsel has illegally contacted.  It is also immaterial, if the illegal depositions are even, either, falsified, or, taken from imposters upon review, the act in itself is default.

Next, the Plaintiff also repeatedly, via email, and in its legal filings into the record, asked the U.S. Attorney to come forward with the disseminated *Complaint*, which was stolen from the Plaintiff's computer and disseminated, before it was filed, was never disseminated by the Plaintiff, and which is materially different from the one filed.  The U.S. Attorney failed to, either, produce this evidence, or, make disclosures on it, which again is per se obstruction.  Moreover, the U.S. Attorney was advised in writing, and in entered legal filings that the Court, in this matter, had cited directly to triple conflicted Counsel's felonious conduct, and that Triple Conflicted Counsel had plead multiple felonies, in addition to the alleged felonies.  *See Motion for a New Trial, and Second Ex Parte Applications Against the U.S. Government in 2:21-cv-06372.*

Further, it is proper to divulge that the U.S. Attorney refused to resolve the case, after filing an improper document, while not being admitted to the Court, and filing a late *Reply* to the *Second Applications* against the U.S. Government, which Triple Counsel had interfered with, in responding to, concurrently with his 9 days late opposition to Plaintiff's *Motion for a New Trial*.  *Local Rules*.  This Plaintiff's *Motion* was never adjudicated, and the Triple Conflicted Counsel was not properly

12                                          *Complaint*

sanctioned, the Court is now under investigation for bribery by the Federal Bureau of Investigation. *Local Rules*. Moreover, we also allege that the Hon. Marty Tangeman has interfered and racketeered with Courts, as a result of an undisclosed family relation, and bizarre unfounded prejudices.

Lastly, we also allege that the U.S. Attorney and triple conflicted Counsel disseminated settlement offers among each other, remained in a private hotel together, across the street from Plaintiff's parents' residence, with the intent to collude, which was improper. *Federal Rules of Evidence 408.* Triple Conflicted Counsel also attempted to allegedly intimidate the Plaintiff through Triple Conflicted Counsel allegedly yelling slurs, and death threats, on double digit occasions. *18 U.S.C. Section 1512. Decl. Mr. B. Woodhouse.* The Plaintiff does not specifically allege that potentially 9th Circuit Judges, and other Judicial Officers, in addition to Triple Conflicted Counsel, and U.S. Attorneys, were also taking up residence at the hotel, and participating in this intimidation exercise, but they should self report themselves and step down for the death threats and slurs, in return for immunity from prosecution. The Plaintiff also opines whether high ranking Judicial Officers, and U.S. Attorneys, should really be stewarding a complex U.S. future, if they believe that bullying small business Owners, in a *Kaftka* game like setting, on behalf of trillion dollar Defendants, and a Muti Billion

13                                   *Complaint*

Dollar purported legal entity, is a prescient, and noble pursuit.  The truth is not kind.

## IV. COMPLAINT.

### A. OBSTRUCTION AND DUE PROCESS VIOLATIONS.

Obstruction, against the conflicted Parties of Nike Inc., Meta Verse Inc., and Gibson Dunn Inc. is properly alleged, here, for the conflicted Parties, in *2:21-cv-06372*, Alphabet Inc., and the U.S. Government, for failing to make serious disclosures, and provide evidence of discovery conducted, in the pre discovery period, in addition to evidence of harassment of Plaintiff's: Bankers, Clients, and Prospective Clients.  *18 U.S.C. Section 1512*.  *U.S. v. Mett*, 178 F.3d 1058 (9th Cir. 1999)(attorney Memos on civil and criminal liability are privileged under the attorney privilege doctrine).  *U.S. v. Matthews*, 505 F.3d 698 (7th Cir. 2007).  The Plaintiff had filed a *Motion for Obstruction* in *2:21-cv-06372*, against the triple conflicted parties in that case, which was never actually adjudicated, in violation of due process, as Triple Conflicted Counsel had failed to offer proper disclosures, after repeated attempts, around: discovery conducted, in the pre-discovery period, a third party bribery payment from a Facebook Director, Felonious entry into Plaintiff's computer and email, Felonious contact with Plaintiff's Customers, Prospective Customers, and Investment Bankers, and Disseminations of such stolen and improperly gained records to the U.S. Government.  *18 U.S.C. Section*

14                                          *Complaint*

*1512*.  *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012)(accessing of email without authorization violated the *Computer Fraud and Abuse Act (CFAA)* and was sufficient for trade theft for criminal purposes).  *Karim Panahi v*.  Such disclosures, here, were needed to successfully assert my Client's rights in front of the Court, in *2:21-cv-06372*, at the initial oral hearing, and such a concealment of evidence is willful and *prima facia* obstruction.

We had made disclosure requests, both, in conferrals, and in writing, we are unsure why the Conflicted Defendants, here, continued to engage in obstruction. *Exhibit D*.  Additionally, we also requested at the oral hearing that these disclosures be made in front of the Judge, and the Court allegedly joined in with the obstruction charade, and instead commenced asking illegal questions, about Plaintiff bank account balances on the specific date, of the hearing in contravention of Federal Financial Privacy laws.  *Motion Hearing 2:21-cv-06372*.  *Lopez v. First Union National Bank of Florida*, 129 F.3d 1186 (11th Cir. 1997).   Further, such committed obstruction, here, coincides, with the Triple Conflicted Counsel's systematic patterns of: pleading felonies, across matters, being consistently triple conflicted across matters, making alleged perjurious statements, and arguing cases that do not stand for his position, which were over six, in *2:21-cv-06372*, including one Ninth Circuit case, which contravened the Court's defective ruling.  *18 U.S.C. Section 1030*.  *Ho Sang Yim v. Barr*, No. 17-70624 (9th Cir. 2020).  *Televideo Inc.*

*v. Hidenthal*, 826 F.2d 915 (9th Cir. 1987). *In Re American Airlines v.*, 972 F.2d 605 (5th Cir. 1992). *See Plaintiff's Second U.S. Government Applications.*

The U.S. Attorneys, here, also have allegedly engaged in obstruction in: not producing a wrongfully disseminated *Complaint*, which was stolen from the Plaintiff's computer system, failing to investigate a $100MM third party payment, failing to make the Court come forward with the discovery in the pre-discovery period, and ignoring three sets of plead felonies in the record, a triple conflict, and a cacophony of procedural violations, in order to cover up their own legal errors. *Exhibit D.  U.S. v. Marinello,* 839 F.3d 209 (2d Cir. 2016).  The Plaintiff, here, has filed into the Plaintiff's *Replies to Motions*, *Opposition* and *Requests for Judicial Notice,*  and in other filings, *in 2:21-cv-06372*, legal directives for that Court, to come forward with potential binders of disseminated illegal depositions, conducted, in the pre discovery period, and properly default the triple conflicted Defendants, and additional Defendants.  *F.R.C.P 26.*

Moreover*,* we are incredulous that the Conflicted Parties, here, were not defaulted immediately by the Court, but this Court must compel the Defendants to be held responsible for this vacuous concealment, which was superficially apparent to whole World. *Televideo Inc. v.*  No more multiple clever meet and greets, with Triple Conflicted Counsel, in the Chambers, are recommended, in this now crmiinal matter.  The Court should understand that the whole World is watching,

16                                    *Complaint*

and irreparable harm is accomplished, when Federal Courts uphold felonies, in order to chase delusions of Firm grandeurs. National Security requires the Federal Court to become functional again, and for U.S. Attorneys to be able to enforce plead felonies, in front of the World.

Moreover, the Plaintiff alleges that the *Complaint* in question was also appropriated off of the Plaintiff's computer, and was illegally disseminated in a draft form to the U.S. Government. *18 U.S.C. Section 1030. Richmark v.* This draft is materially different to the filed one, and even states a different dual citizenship for the Plaintiff, no files of any kind were ever provided to the triple conflicted Parties, before filing, and Alphabet Inc. even feigned lack of knowledge in its late defense. *Decl. Mr. B. Woodhouse.* This independent and autonomous Court, here, should take affirmative action to enjoin the conflicted Parties from the pathological stealing of private records. Triple Conflicted Defendants should also not be winning prizes, in obstructed Courts for their felonious behavior. Whether the Court lacks capacity is for the California Bar, alleged bribery from Gibson Dunn appears superficially slick, but when you cannot practice law without committing crimes, and Courts have to come under capacity checks, it is time for the U.S. Attorneys to do their respective jobs.

Finally, the Court, in *2:21-cv-06372*, and as a direct result of the aforementioned obstruction from the alleged colluding U.S. Attorneys and Triple

17                                    *Complaint*

Conflicted Counsel have also denied substantial due process to Plaintiff's Client. Specifically, over twelve *Motions* and *Applications* were failed to be adjudicated at all, including one unopposed *Motion for Default* for plead felonies*,* and conflicts, which the U.S. Attorney had notice of, a 9 days late opposed *Motion for a New Trial*, *Motion for Obstruction*, and *Motion for Disqualification.* A *Motion for a New Trial* is the correct filing, but the Plaintiff filed an additional *Motion to Re-Open*, concerned that Triple Conflicted Counsel, who is not qualified, would persuade the abrogated Court that it was the correct filing, not the *Motion for a New Trial.* Such violations of due process exceed all bounds of decency, and is the primary reason why the Federal Bureau of Investigation has placed the Court, *in 2:21-cv-06372*, under investigation for bribery, and collusion. *U.S. Constitution. Washington D.C. Office F.B.I. Anti Corruption Division.* Moreover, the Court, in that case, had a legal duty to re-assign the case and disqualify himself immediately, once he realized that he was unable to take judicial notice of the criminal conduct, and that the Court had been so compromised, it was not even able to adjudicate a single Plaintiff's, either, Motion, or, Application. *28 U.S.C. Section 455. Caperton v. A.T. Massey Coal Co. Inc. et al., 556 U.S. 868* (2009).

Furthermore, we also argue that the Court, in *2:21-cv-06372*, believed that it could violate due process, in not adjudicating documents, as a result of the U.S. Attorney's office failing to force the Court to come forward with the concealed

18                                                *Complaint*

discovery in the pre-discovery period.  *In Re Murchison v*.  This obstruction, here, emboldened them.   We also believe that our Client's general due process was also violated by the U.S. Attorney's obstruction, which failed to produce the stolen legal files, and morosely failed to take any notice of the consistent plead felonies in the record by Triple Conflicted Counsel, despite frequent reminders by the Plaintiff that it had no choice, and was legally bound to enforce the felonies.  *Decl. Mr. B. Woodhouse.  Combs v.*

Moreover, the improper filing by the U.S. Attorney mirrors the Court's child like approach to legal administration, in not citing to any appropriate legal sources, and copying Triple Conflicted Counsel's resuscitation of Court Records involving dead Justices, who were impeached by the U.S. Senate.  Felonies and criminal conduct, which are plead, and not alleged, can never go unpunished, because those charged with bestowing justice, have written trite phrases, proclaiming not to want to take notice of anything.  Such a trend, would lead to total chaos, and require immediate National Security intervention, with a National Security incarceration protocol.

### B. FRAUD AND COLLUSION.

Plaintiff alleges fraud and collusion against the conflicted Defendants, Alphabet Inc. and the U.S. Government, for Triple Conflicted Counsel and the

*Complaint*

U.S. Attorney: pleading felonies, being triple conflicted, arguing six cases that do not stand for their respective position, four late filings, procedural violations, such as a *Motion* too long, material interference with *Applications*, which is per se collusion, improper dissemination of settlement offers among themselves, alleged improper contact with the Court, alleged self-dealing in engaging in fraud to mitigate attorney error, and create due process violations.  As stated, "it is unlawful (and a violation of an attorney's ethical obligations) for an attorney to commit any act of moral turpitude, dishonesty, or corruption." *Business and Professions Code section 6106*.  All alleged acts, here, clearly rise to the level of dishonesty, as there was no production of stolen legal files, and illegal depositions, in addition to no notice of multiple plead felonies.

Moreover, we bring this action under, *Civil Rico*, *18 U.S.C Section 1962(b)* and *(c)*, which prohibits any person from using a pattern of racketeering activity to, either, acquire, or, maintain control over an enterprise; and prohibits a person from conducting the affairs of an enterprise through a pattern of racketeering.  *United States v. Puente*, 982 F.2d 156, 159 (5th Cir. 1993) (providing reckless disregard or reckless indifference to meet the Rico scienter element where the defendant makes a false statement of a material fact and consciously avoids learning the truth). Further, the 9th Circuit has well held that excessive punitive damages are warranted and dissolution, when small business Leaders, are "preyed upon" by colluding

20                                    *Complaint*

Parties, in positions of superior economic prowess, as in the case, with the U.S. Attorney and conflicted trillion dollar companies, in *2:21-cv-06372*. *Neibel v. Trans World Assurance Company*, 108 F.3d 1123 (9th Cir. 1997)(excessive punitive damages awarded for scheme to defraud small business leaders).  Also, reliance is not needed to find proximate cause, and the U.S. Attorney, Court and Triple Conflicted Clients, all proximately caused the concealment of evidence, here, by not producing the illegal depositions disseminated.  *See Bridge v. Phx. Bond & Indem. Co.,* 553 U.S. 639, 128 (2008).

Finally, the various acts of obstruction, here, concerns, both, the Plaintiff as an individual, his work as manager for the enterprise, Havensight Capital L.L.C. and the resulting injury from the alleged obstruction, concerns, both, damages to the economic interests, of both person, and enterprise.  *Diaz v. Gates*, 420 F. 3d 897 (9th Cir. 2005).  The Court has liberally construed enterprise to include sole proprietors, and any unlawful act, which causes any damage of any kind, both, in personal injury, and economic advantage.  *Id*.  The alleged obstruction, here, against the U.S. Government, and the conflicted Defendants, and alleged racketeering activity, here, has proximately caused identifiable financial harm, in the Court's denial to due process, felonious award of payments to Triple Conflicted Clients, in addition to, alleged interference with prospective Customers, Bankers etc.

21                                          *Complaint*

Further, the Triple Conflicted Clients, here, has engaged in a pattern of alleged racketeering, in systematically: pleading felonies into the *Court Record*, disseminating settlement offers to the public, using the Court Record, allegedly illegally entering State databases, illegally entering the Plaintiff's computer to steal legal files, allegedly obstructing the Court by refusing to make basic disclosures, around illegal discovery in the pre-discovery period, triple conflicted representations, and in colluding with the U.S. Attorney to share settlement offer data, to reside together in illegal harassment, and to convince the Court, not to come forward with the concealed evidence of illegal depositions, despite numerous proper filings with the Court, making such an elementary request. *2:21-cv-06372 Court Record. Richmark v. In Re American Airlines v. U.S. v. Federal Rules of Evidence 408.*

The Triple Conflicted Counsel's attempt to represent two trillion dollar companies and his billion dollar Law Firm concurrently, in the matter *of 2:21-cv-06372,* is obvious racketeering collusion between Parties of superior economic strength. *Id.* It also calls into question why the U.S. Attorney's office did not perceive the triple conflicted representation and plead felonies to be enforceable, such ignoring of plead criminal conduct, also, satisfies the scienter element needed, for this Court to find racketeering. It is also in the interest of justice to keep a

22                                    *Complaint*

healthier arms length, between the U.S. Government, and these multiple trillion dollar behemoth companies.

   Moreover, we allege that President Biden has already courted numerous meetings, and invitations for conferrals from these conflicted trillon dollar Defendants, and Gibson Dunn Inc. Leaders, and yet I am still patiently waiting by the phone for his call, as a small business Owner.  The number is captioned at the top, and I even actually operate a 5G carrier at www.mongomobile.com, and the service would only cost the Oval Office $24 a month.  Obviously, we need a Court and Justice Department to have slightly more independence and autonomy, under such circumstances, then granting large cash prizes for plead felonies to unadmitted to the Court conflicted Counsels.  The law provides reckless indifference to be sufficient to create a just *Civil Rico* claim, and the Court, here, must take note that the U.S. Attorney and Court's inability to come forward with basic disseminated illegal evidence, and take notice of plead felonies, would be sufficient for reckless indifference, if nothing more.  *U.S. v.*

   Moreover, the due process violations, referenced in *Section A* of this filing, also suggest that there has been racketeering, between the U.S. Attorney, Court, and Conflicted Counsels, which is not in the interest of safeguarding the administration of justice.  Specifically, the Court has been unable to, either, adjudicate any documents, or, take judicial notice of any plead felonies, in addition

23           *Complaint*

to the over four late filings, procedural violations, and conflicts.  Such a

cataclysmic failure, here, is likely the result of alleged improper contacts between

the Court, the U.S. Attorneys, and the Conflicted Defendants.  Further, such

improper contacts cannot be properly extirpated, until a discovery period, on these

important obstruction crimes, plead felonies of record, and collusive behavior is

ordered for examination.

Further, the Hon. Tangeman's alleged personal crusade, here, to call around

Judges and obtain favors, which calls for the upholding of felonies, for the sole

purpose of ruining the Plaintiff's economic opportunities, would also qualify for

satisfying the racketeering, and proximate cause elements, needed for a *Civil Rico*

claim.  We are uninterested in his prejudices, formed from old wives tales, and

alleged law school female crushes, on the Plaintiff from related family members.

If the Court derelicts its duty at the whim of every gilted female companion that

the Plaintiff knows, there would be absolutely no legal future precedent for the

Court to follow.  Charm, and charisma are virtues, not torts, all Counselors should

demonstrate them, even U.S. Attorneys.  *Model Rules of Attorney Conduct.*

Finally, the Court, here, must also take notice that the U.S. Attorney, despite

the *Complaint*, in *2:21-cv-06372*, containing verified and credible torture claims,

gassing by other Governments, and even in one special situation, intimidation by

flown fighter jet into person, and after filing an improper document, while being

24                                    *Complaint*

unadmitted, and then following it up, with a late filing, after Triple Conflicted Counsel interfered with the *Applications*, via a 9 days late *Opposition* filing, refused to confer on settlement offers of any kind.  Such a disrespectful, and philistine, approach to our legal profession, and unethical behavior, is beyond reproach.  The U.S. Attorney, here, failed to offer anything, because they were: allegedly racketeering with Triple Conflicted Counsel, trying to grandstand for billionaires, covering up patent self committed legal errors and felonies for a Triple Conflicted Counsel, which were plead into the record, and just generally acting in an atrocious jingoistic manner, which mimics a juvenile detention center.  They also unbecomingly and willfully leveraged the fact that the Court was defective and likely allegedly bribed, here, as it had already completely abrogated due process.  They should have, instead, offered, on the potential damages from a reasonable Court, based on the respective legal positions, and conferred with Plaintiff's Counsel.

Further, such plebian, savage, and narrow minded conduct, might have, here, encouraged the Court, in *2:21-cv-06372*, to grant cash prizes for felonies.  With all of the criminal conduct, interferences and collusion, it is impossible for Plaintiff's Counsel to know what events militated the criminal conduct eventually being disgustingly upheld, and rewarded.  Did the plead felonies cause the improper filing, did the interference stop the Court from adjudicating documents?  This

25                                    *Complaint*

Court is charged with restoring a decorum to the Court that is becoming of professionals who are, global citizens, canonical like, and one in which the American Leadership can cite to, when they interact with Foreign Government Leaders.  A good helping of discipline, respect, and humbleness from this Court, could also assist a mephistophelian and glib U.S. Attorney's office from inspiring any additional, either, corruption, or, collusion from the trillion dollar Defendants. Triple Conflicted Counsel's frequent references in the filings to having relations with the Plaintiff's friend's wife, were not addressed by the Court, and might have been a more compelling topic for disparagement at the hearing, on Nov. 12th, 2021, rather than Plaintiff's personal bank amounts.  Triple Conflicted Counsel, here, has likely requested through his purposeful obstruction, and collusion, an interest in coming back for a second helping of Caribbean shepherd's pie, in learning about basic privacy.

### C. INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS AND ECONOMIC RELATIONS.

To prevail on a claim of *I.I.P.E.R.,* a Plaintiff must demonstrate the following elements: 1) the existence of a valid prospective business relationship; 2) intentional interference with that relationship; 3) by a third party; 4) accomplished through improper means or for an improper purpose; 5) a causal effect between the interference and the harm to the relationship or contract; and 6) damages. *Buckaloo v. Johnson*, 14 Cal.3d at 828-29, 537 (only a tenuous colorable economic

26                                    *Complaint*

relationship to a prospective Party need be shown for a successful *I.I.P.E.R.* claim). Further, The tort of intentional interference with prospective economic advantage extends liability to "`business relations or advantages which are merely prospective and ordinarily not the subject of an existing contract." *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848 (9th Cir. 1995). Moreover, in *Multimedia Patent Trust v. Microsoft*, 525 F. Supp 2d 1200 (S.D. Cal 2007), the Court upheld that interference with economic relations should be found for an attorney's, both, lack of candor, and in attempting to conceal evidence of prior art to a intellectual property tribunal. This case is analogous to the matter at hand, as the U.S. Attorney's Office, Triple Conflicted Clients, including Alphabet Inc. and the Court, here, have attempted to conceal: evidence of illegal discovery, in the pre-discovery period, stolen legal files from the Plaintiff's computer, and interference with Plaintiff's customers and bankers. The U.S. Attorney has also failed to take any action against Triple Conflicted Clients, despite multiple felonies, being plead into the *Court Record*, which they were an *Attorney of Record* for. *Federal Rules of Evidence 408. Richmark v.*

Further, in this instance the Plaintiff can prove that he as Counsel and his company, Havensight Capital L.L.C. has economic relations with other foreign governments, prospective customers, actual customers, and investment bankers. The Plaintiff, in *2:21-cv-06372*, actually cited to interference with an initial public

*Complaint*

offering for a confidential company of Havensight Capital L.L.C., in which the Triple Conflicted Counsel, here, allegedly feloniously entered the Plaintiff's business and personal email, and then proceeded to request in person surveillance of the negotiations at the Bank's Office, which violated the privacy not only of the Plaintiff, but also a Financial institution, which has a heightened privacy stature under Federal law.  *18 U.S.C. Section 1030.*  Moreover, there has now been intentional interference wit this act, in addition to the acts of obstruction, which are alleged in *Section A* of this *Complaint*, and in the violation of Plaintiff's due process by the Court, who chose not to inquire into felonious conduct, but rather to cite to Triple Conflicted Counsel's felonious actions, as a legal basis for an *Order. Exhibit B.  P. 7 Defective Order.*

Furthermore, the U.S. Attorney, here, was provided actual notice of plead felonies, and was directly propositioned for stolen legal files, investigations into alleged $100MM third party payments, and even impersonation of their own respective office by the Plaintiff.  *18 U.S.C. Section 1831*.  They were unable to do anything affirmative, as they were allegedly colluding with the Court, and the Triple Conflicted Client for reasons unknown, and in the creation of some very scary precedence.  Such acts, were the proximate cause with the interference of Plaintiff's ability to operate his business, practice law effectively in representing his business, and himself, and in making new Customers.  It also can even be

28                                                  *Complaint*

argued that the Planitiff's chances of future business, economic relations, and contracts, are materially harmed when Courts allow criminal acts to be perpetrated and plead against the Plaintiff and his companies, and that the obstruction in this matter, could have assisted the Plainiff in recovering valuable economic loss.

Additionally, there are actual damages, here, as the Plaintiff alleges that he lost the opportunity at the public offering, due to the Triple Conflicted Counsel's interference with the negotiations, and has lost customers and prospective customers, from the Defendant's consistent felonious entry into the computer system of the Plaintiff.  Additionally, prospective Clients might be wary of the Plaintiff's ability to protect their privacy, when Triple Conflicted Counsel has allegedly stolen the names of carrier customers, plead takings of attorney emails, which signal that privileged communications could be shared with the World at any time, and has genuinely obstructed the Plaintiff, from being able to assert basic legal rights, by failing to produce illegal discovery, and evidence of alleged stolen legal files.

Next, the Plaintiff, here, does not need to plead specific names of Customers and further compromise the integrity of its operations.  The Court also can take solace in the fact that the U.S. Attorney, the Court, and the Conflicted Defendants, and Alphabet Inc. have all contributed to the obstruction, to adversarial collusion, and genuine laissez faire attitudes to plead criminal conduct.

29                                        *Complaint*

It is especially important, in a global sense that, both, this Court, and the U.S. Attorney reflect on the alleged obstruction, and take affirmative measures to ensure that such officious and banal dissemination of private records, settlement offers, and improper collusive filings, do not ever take place again.  The Court, here, has been recommended to send a resolute message to all Defendants, via compensatory and punitive damages.   Moreover, the independent acts of the Judicial Officers, Triple Conflicted Counsel, and U.S. Attorneys engaging in making slurs, and death threats, while taking up position in a hotel across the street from the private residence of the Plaintiff's family, should also meet the elements above, as it is likely the proximate cause of embarrassment, which scares potential customers, and inhibits the Plaintiff from adding customers for his companies.  There are actual damages as there are plead potential loss of sales to Havensight Capital L.L.C. and it is via an illegal means as death threats to a potential witness are not statutorily legal.  *18 U.S.C. Section 1512*.

Finally, the Plaintiff intends to call, its collegiate academic advisor, economics Nobel prize winner, Prof. Robert Shiller, to testify as to market values for public companies, which operate in the sectors, covered by Havensight Capital L.L.C.  Dr. David Hall, U.S.V.I. Professor, Attorney, and Civil Rights Leader, will also be called to present common modular prejudices and stereotypes that U.S. Virgin Islands small business owners must confound, in Federal Courts, and

*Complaint*

Economic arenas.  A potential jury must understand the serious nature of these torts, and the overall financial damage that alleged obstruction, fraud, and intentional interference from the conflicted Defendants, Alphabet Inc., and the U.S. Government, have caused, and the risk of allowing plead felonies, and alleged felonies to go unenforced.

## V. CONCLUSION AND REQUEST FOR DAMAGES.

In conclusion, the Court, here, should dissolve the past conflicted Defendants, and Alphabet Inc., and award U.S. $3 Trillion in compensatory and punitive damages to the Plaintiff, against each of the four Defendants for the obsequious criminal conduct, and to enjoin the Defendants from: engaging in pleading felonies, stealing private records, engaging in conflicts, and colluding with, either, the Court, the U.S. Attorney's Office, or, both, to complete patent obstruction.  There is a public interest in not allowing conflicted trillion dollar parties to earn cash rewards for pleading criminal conduct, as such a possibility, would lead to future National Security concerns that this Court could probably not even fathom.

## VI. REQUEST FOR A JURY TRIAL.

The Plaintiff, here, requests a jury trial, which it is afforded, under *F.R.C.P. 38* and has noted that on its *Civil Cover Sheet.*

31                                    *Complaint*

Respectfully submitted,

*/s/ Benjamin Woodhouse*
Benjamin Woodhouse esq.
2369 Kronprinsends Gade, Ste. #8
Charlotte, VI. 00801
805 478 1958
California Bar #261361

32                          *Complaint*

**EXHIBIT A**

1
2
3
4
5

6                    UNITED STATES DISTRICT COURT

7                   CENTRAL DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| MR. BENJAMIN WOODHOUSE, | Case No. 2:21-cv-06372-SB |
| | |
| Plaintiffs, | Plaintiff's *Replies* to *Ex Parte Application to Strike Non Admitted Improper U.S. Government Filing, Second Ex Parte Application to Default U.S. Government,* and *Request for Judicial Notice of Triple Conflicted Counsel's Interference Document with the Applications, Sanctionable Alleged Perjurious Statements of Timely Filings, Three Untimely Filings, Plead Felonies, Triple Conflict, Non Admission, and Procedural Violations* |
| v. | |
| THE UNITED STATES GOVERNMENT ET AL., | |
| Defendants. | |
| | **Hearing:** |
| | **Date: January, 7th 2022** |
| | **Time: 8:30 AM** |
| | **Place: Courtroom 6C** |
| | **Judge: Hon. Stanley Blumenfeld, Jr** |

21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**I. INTRODUCTION**……………………………………………1

**II. THE U.S. GOVERNMENT HAS FAILED TO FILE ANY TIMELY OPPOSTION.  FURTHER, THE U.S. GOVERNMENT HAS STILL NOT PROVIDED THE PLAINTIFF'S WITH REQUESTED WRITTEN DISCLOSURES AND HAS NOT COME FORWARD WITH THE ALLEGED DISSEMINATION OF DISCOVERY IN THE PRE-DISCOVERY PERIOD AND STOLEN *COMPLAINT*.**
……………………………………………………………6

**III. REQUEST FOR JUDICIAL NOTICE OF TRIPLE CONFLICTED COUNSEL'S: 9 DAYS LATE OPPOSITION TO PLAINTIFF'S MOTION, MATERIAL INTEFERENCE WITH APPLICATIONS AGAINST THE U.S. GOVERNMENT, VIA A FILED OPPOSITION, THREE LATE FILINGS, IN ADDITION TO MULTIPLE FELONIOUSLY PLEAD DISSEMINATION OF PRIVILEGED ATTORNEY EMAILS, FELONIOUSLY PLEAD DISSEMINATION OF SETTLEMENT OFFERS, TRIPLE CONFLICTED REPRESENTATION, AND PROCEDURAL VIOLATIONS, NON**

*Reply to Second Ex Parte Applications, and Request*

ADMISSION TO THE COURT ON FIRST FILING,  AND

SANCTIONABLE CONDUCT IN THE FALSE PLEADING OF TIMELY

FILINGS IN HIS 9 DAYS LATE OPPOSITION.

……………………………………………………………………….7


**IV.** *MEMORANDUM,* **AND** *NOTICES OF LODGINGS*……………...10


**V. CONCLUSION**……………………………………………………….12

# MEMORANDUM OF POINTS AND AUTHORITIES

**Cases:**

*Combs v. Rockwell Int'l Corp.,* 927 F.2d 486, 488 (9th Cir. 1991)………1,4,6

*Dowd & Dowd L.T.D. v. Gleason,* 181 Ill. 2d 460 (Ill. 1998)……………2

*Government of the U.S.V.I. v. Smith,* 615 F.2d 964 (3d Cir. 1980)………5

*Lopez v. First Union National Bank of Florida,* 129 F.3d 1186

(11th Cir. 1997)…………………………………………………...12

*Molski v. M.J. Cable Inc*., 481 F. 3d 724 (9th Cir. 2007)…………………1

*Montgomery Ward Co. v. Duncan*, 311 U.S. 243 (1940)…………………1

*In Re American Airlines v*., 972 F.2d 605 (5th Cir. 1992)………………..2,12

*In Re Dual-Deck Video Cassette Recorder Antitrust Litig*., 10 F.3d 693,

695 (9th Cir. 1993)……………………………………………..4

*In re Murchison*, 349 U.S. 133 (1955)…………………………………4

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468,

1475 (9th Cir. 1992)…………………………………………………2,5,6,12

*Schmidt v. Baldy*,  CV 16-9368-DSF (C.D. Cal. Oct. 19, 2019)…………..3

*Silva v. Vittorio*, 658 F.3d 1090 (9th Cir. 2011)…………………………..2,7

*Televideo Inc. v. Hidenthal*, 826 F.2d 915 (9th Cir. 1987)………………..2

*United States v. Contra Costa County Water Dist., 678 F.2d 90*

*(9th Cir. 1982)*……………………………………………………2,3,5

*United States v. Glover*, 596 F.2d 857 (9th Cir. 1979)……………………5

*Waits v. Frito Lay Inc.*, 978 F.2d 1093 (9th Cir. 1992)…………………...12


**Statues:**

*18 U.S.C. Section 455*……………………………………………….4

*18 U.S.C. Section 1030*……………………………………………12

*18 U.S.C. Section 1519*……………………………………………1

*18 U.S.C. Section 1621*…………………………………………....1,3

*18 U.S.C. Section 1832*……………………………………………12

*18 U.S.C. Section 2071*……………………………………………1,6

*U.S. Constitution*…………………………………………………..9


**Rules:**

*F.R.C.P. 11*…………………………………………………………...1

*Federal Rules of Evidence 408*…………………………………....1,6,9

*Judges Standing Order*…………………………………………….5,10

*Local Rules 7-9*……………………………………………………3

*Local Rules 7-13*…………………………………………………..7

# I. INTRODUCTION.

The Plaintiff, here, moves the Court to summarily strike the U.S. Government's improper *Opposition* to Plaintiff's pending *Motion for Default*, and to gallantly default the U.S. Government for: its improper non lodged filing, failure to respond to Plaintiff's *First Application for Default*, the Court's citation to Triple Conflicted Counsel's Felonious conduct in its defective *Minutes Order*, an improper oral order at a hearing for the exact daily balance of the Plaintiff's personal and private bank account, the alleged concealment of discovery, in the pre-discovery period, disseminated to the Court by Triple conflicted Counsel, and the filing U.S. Attorney's non Admission to the Court. *18 U.S.C. Section 1519*. *18 U.S.C. Section 2071*. *Federal Rules of Evidence 408*. *P. 7 Court's Defective Minutes Order*. *Central District of California Admission to the Court Website*. *Montgomery Ward Co. v. Duncan*, 311 U.S. 243 (1940)(motion for new trial granted and not precluded by judgment). *See also Molski v. M.J. Cable Inc.*, 481 F. 3d 724 (9th Cir. 2007)(motion for new trial granted for mistake of law). *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991). We have also asked the Court, on *Motion* and on its own to disqualify itself for due process violations of failure to adjudicate six documents, and citation to criminal conduct. *In re Murchison*, 349 U.S. 133 (1955)(Supreme Court case ruling Judicial disqualification for due process violation).

1            *Reply to Second Ex Parte Applications, and Request*

The Plaintiff, also, asks the Court, to grant its *Request for Judicial Notice* in its *Second Application* and in this *Reply* filing, in order to, both, immediately, and affirmatively, default, Nike Inc., Facebook Inc., Gibson Dunn Inc., and Alphabet Inc. for: triple conflicted representation, felonious entry of attorney emails across three separate filings, a non Admission to the Court, felonious entry of settlement offers concerning this matter, argument of cases that do not stand for the Triple Conflicted Counsel's position across three separate filings, alleged perjurious statements, and a platoon of procedural violations, including but not limited to, over length documents, three sanctionable late filings, and arguments of cases that do not stand for their respective positions, across filings. *Central District of California Admission Website*. *In Re American Airlines v*., 972 F.2d 605 (5th Cir. 1992). *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992). *United States v. Contra Costa County Water Dist*., 678 F.2d 90 (9th Cir. 1982).

Moreover, in addition now to, these abominable plead felonies, conflicts, and violations, Triple Conflicted Counsel has fervently interfered improperly, with the U.S. Government's Defense of the *Second Application*, in filing an *Opposition to the Second Application*, concurrently, with a 9 days late *Opposition to a* Plaintiff's *Motion for a New Trial*. This despite the *Applications* being captioned, against the U.S. Government. *Silva v. Vittorio*, 658 F.3d 1090 (9th Cir.

2    *Reply to Second Ex Parte Applications, and Request*

2011)(seizing legal files constitutes actual interference). *Dowd & Dowd L.T.D. v. Gleason*, 181 Ill. 2d 460 (Ill. 1998). If Triple Conflicted Counsel, here, had properly contacted the Clerk to *Notice an Opposition to Application*, as instructed by the *Judge's Standing Order*, the Clerk could have warned Triple Conflicted Counsel, here, not to interfere.

Further, Triple Conflicted Counsel should be sanctioned, here, not only for this being a third late filing, and for an egregious improper interference, but also for arguing that his earlier *Reply* documents were not filed late, when this is untrue, Triple Conflicted Counsel knows it to be untrue, and it is an alleged perjurious statement. *18 U.S.C. Section 1621. Local Rules 7-13*. We also note that Triple Conflicted Counsel also commits alleged perjury, again, in stating his 9 days late *Opposition* to be timely, in a string citation violation, which states that the rules is 21 days prior to a hearing for response, and not the ten days expressly delineated in the *Local Rules* for a *Motion for a New Trial. See Local Rule 7-9. Judges Standing Order*. The Court, here, must sanction, both, Triple Conflicted Counselors, under the *Local Rules*, and take judicial notice of Alphabet Inc. failure to oppose the *Motion for a New Trial. Local Rules 7-13*.

Moreover, the Court cannot believe that Triple Conflicted Counsel is inadvertently confused on the rule, as we cited to the *Local Rules* for the 10 day opposition period in a Court filing, it is wanton alleged perjury, brought on by a

3        *Reply to Second Ex Parte Applications, and Request*

Court that inadvertently allowed plead felonies, and cited to them. P. 7 *Defective Court's Minutes Order*. *U.S. v.* Right on que, Triple conflicted Counsel also cites to, *Schmidt v. Baldy*, CV 16-9368-DSF (C.D. Cal. Oct. 19, 2019), to argue that violations of a Federal privacy Statue, in oral inquiry into a bank account amount, is legal, this case makes no such reference, and rather involves a Plaintiff, similarly situated to the Plaintiff in this matter, prevailing on Interference with Economic Advantage claim. I have no professional idea, as to why the Triple Conflicted Counsel insists on arguing wrong cases in every filing, and often cases directly in support of Plaintiff's position, my sense is Judicial enforcement of plead felonies in this matter, are in the public interest.

Moreover, Triple Conflicted Counsel also argues that Judge Blumenfeld being disqualified, as a potential witness, would open the door to all Judges being disqualified in his interference filing. *Triple Conflicted Counsel's Improper Opposition*. This is illogical, he is a potential witness, here, because he made an illegal oral request and failed to follow due process. *18 U.S.C. Section 455*. *See In Re Murchison*. The U.S. Government might also, with an Independent Team, call the Judge as a witness, here, to question why the alleged discovery, in the pre-discovery has not been brought forward for default, and why he cited to felonious conduct in a defective order. *P.7 Court's Defective Minutes Order*. *Combs v. U.S. v.*

4          *Reply to Second Ex Parte Applications, and Request*

Furthermore, the Court can take *judicial notice* that like all of the defective Defendant filings, there are no asserted defenses in his late and improper *Opposition*, only recitals of past Court Records from an impeached Judge, in direct contravention of 9th Circuit case law, *In Re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993), which Triple Conflicted Counsel unethically argued. *See Defendant's Opposition to First Application*. Our *Motion for a New Trial* must be granted on such a late filing, and on the referenced conduct above, if not proper default for takings of electronic records, dissemination into the record of settlement records, and his triple conflict.

Finally, the U.S. Government, here, cannot properly assert Judicial immunities for the criminal acts, of the Court, here, citing to the felonious entry of settlement offers as a basis for its ruling, and for alleged concealing of disseminated discovery evidence, which was compiled in the pre-discovery period. Also, this violation is an independent grounds for default. *P. 7 Defective Court's Minutes Order*. *Combs v. Government of the U.S.V.I. v. Smith*, 615 F.2d 964 (3d Cir. 1980)(no Judicial immunity for Judicial Witness where Government Countervailing interests apply, New Trial granted for questioning around epilepsy). Either, the Court, or, the U.S. Government, here, must come forward immediately, with the evidence, to avoid an Independent Obstruction *Complaint*. *U.S. v. Glover*, 596 F.2d 857 (9th Cir. 1979)(evidence or non evidence derived from attorney

5              *Reply to Second Ex Parte Applications, and Request*

client interference is material for violations to be found).  It is of no consequence if the alleged disseminated was to, either, the Court, or, the U.S. Government.

Furthermore, even if the Court cannot be held criminally liable, it is certainly compelled, via operation of law to default the Triple conflicted Parties in this case for the: plead felonies, triple conflicts, late filings, and procedural violations.  *Richmark v*.  It is also in the interest of justice to send trillion dollar companies a message, that they are not above the law, and that they must answer to the Court, when they unduly exert influence as a result of their overpowering girth, and allegedly felonious interfere with the Customers, Prospective Customers, and Investment Bankers of small Business Owners.


**II.  THE U.S. GOVERNMENT HAS FAILED TO FILE ANY TIMELY OPPOSITION.  FURTHER, THE U.S. GOVERNMENT HAS STILL NOT PROVIDED THE PLAINTIFF'S WITH REQUESTED WRITTEN DISCLOSURES AND HAS NOT COME FORWARD WITH THE ALLEGED DISSEMINATION OF DISCOVERY IN THE PRE-DISCOVERY PERIOD AND STOLEN *COMPLAINT*.**

First, the U.S. Government, here, has failed to file an opposition to these important *Applications*.  The opposition was due within 48 hours from service, on Dec. 17th, with Dec. 20th as the next Court day falling, on a non weekend day,

being the latest possible date for filing.  *Court Record*.  The Court, here, should

accept this failure to oppose our *Applications* as, both, the U.S. Government

conceding default, and the U.S. Government's intentions to recover from the triple

conflicted parties that have interfered, with these *Applications*.  *Silva v.*  Although,

*Local Rules 7-13* requires sanctions for late filings, the U.S. Attorney, here, is

junior, and has not plead felonious conduct, and filed three late filings, like more

senior Triple Conflicted Counsel, who has a *Motion for Obstruction* and a *Motion

for Rule 11 Sanctions* pending against him, thus sanctions, here, probably are only

in order for Triple Conflicted Counsel.

Second, the Plaintiff, here, has made multiple written requests to the

Department of Justice, and made requests via filed pleadings, seeking specific

disclosures, around dissemination of an alleged stolen *Complaint,* dissemination of

discovery in the pre-discovery period, and impersonation of Plaintiff's Counsel,

and Department of Justice Officials, at the Triple Conflicted Parties funding, in

various Courts, concerning matters, involving the Plaintiff.  *18 U.S.C. Section

2071*.  *Combs v.  Richmark v.*  Further, the U.S. Government, here, must make the

Court come forward with the alleged dissemination of discovery, in the pre-

discovery period, and investigate independent, the Court's citation to criminal

conduct for external influence from the conflicted Parties, in its *Order*.  *P. 7

Defective Court's Minutes Order.  U.S. v.  Federal Rules of Evidence 408.*

7                    *Reply to Second Ex Parte Applications, and Request*

**III. REQUEST FOR JUDICIAL NOTICE OF TRIPLE CONFLICTED COUNSEL'S: 9 DAYS LATE *OPPOSITION* TO PLAINTIFF'S *MOTION*, MATERIAL INTEFERENCE WITH *APPLICATIONS* AGAINST THE U.S. GOVERNMENT, VIA A FILED *OPPOSITION*, THREE LATE FILINGS, IN ADDITION TO MULTIPLE FELONIOUSLY PLEAD DISSEMINATION OF PRIVILEGED ATTORNEY EMAILS, FELONIOUSLY PLEAD DISSEMINATION OF SETTLEMENT OFFERS, TRIPLE CONFLICTED REPRESENTATION, AND PROCEDURAL VIOLATIONS, NON ADMISSION TO THE COURT ON FIRST FILING, AND SANCTIONABLE CONDUCT IN THE FALSE PLEADING OF TIMELY FILINGS IN HIS 9 DAYS LATE OPPOSITION.**

First, Plaintiff filed a *Motion for a New Trial,* on Nov. 29th, and the *Local Rules* state that oppositions are due in 10 days from filing, making any opposition due on Dec. 9th. Triple Conflicted, here, filed an *Opposition,* on Dec. 18th, 9 days late, and after Plaintiff has filed a timely *Reply*, assuming it was unopposed, as Triple Conflicted Counsel failed to respond to Plaintiff's conferral emails. *Court Record*. Even if Triple Conflicted Counsel was going to concede the *New Trial Motion*, but somehow defend against another *Motion*, it would be due, on Dec. 17th, and not the 18th. Second, Triple Conflicted Counsel, here, has sanctionably

8              *Reply to Second Ex Parte Applications, and Request*

argued that the Two *Replies* to his duplicative *Motions to Dismiss* were timely,

they were noticed for Nov. 12th, 27 days and not 28 days in advance, and thus

*Replies* were due, 14 days Court from the hearing, which would be Oct. 28th, with

3 full days in Oct. and 11 days in November, as the hearing date and the date of

filing do not add up to a Court day.  Both *Replies* were filed late, on Oct. 29th by

Triple Conflicted Counsel.  *Id.*  Three late filings are grounds for sanctions, and

arguing that the documents are timely filed is unconscionable.

Third, the Triple Conflicted Counsel, here, was not admitted to the Court, on

the First filed *Motion*, and the Court must vacate its *Order*, on granting this *Motion*

in error, on this fact alone.  *Central District of California Attorney Admission*

*Website*.  Fourth, the first Motion was over length by 2 pages, mispaginated, and

contained string cites, a violation of the *Standing Order*.  Triple Conflicted

Counsel, here, gained admission, on Oct. 15th as evidenced by the site, and his

*First Motion to Dismiss* was filed on Oct. 3rd.  *Court Record.*  Fifth, Triple

Conflicted Counsel, here, is triple conflicted, representing his own Firm, Gibson

Dunn, in addition to Facebook Inc. and Nike Inc. concurrently, all settlement offers

sent, have been reviewed by all Parties in conflict.  *In Re American Airlines v.*

Sixth, Triple Conflicted Counsel, here, made alleged perjurious statements

in his initial *Motion to Dismiss*, claiming no conferral, but then attaching conferral

emails.  There was also an alleged perjurious statement, in Alphabet Inc.'s filing,

9                    *Reply to Second Ex Parte Applications, and Request*

claiming that Ms. Linsley had conferred with us on Alphabet Inc.'s service while being served, which was untrue. *Court Record.* Seventh, Triple Conflicted Counsel, here, feloniously entered privileged attorney emails, and disseminated settlement offers, in his second duplicative *Motion to Dismiss*. *Id.* *Federal Rules of Evidence 408.*

Eighth, the Court, here, then cited expressly to the feloniously disseminated settlement offers as a basis for the Judgment. *P. 7 Defective Court's Minutes Order.* Nineth, Triple Conflicted Counsel, here, feloniously entered attorney emails into his *Application for Attorney fees,* as the Court had rewarded criminal conduct. Tenth, the Court, here, has failed to adjudicate six filings, including the Plaintiff's First unopposed *Motion for Default* of the triple conflicted Parties, and the *First Ex Parte Application.* Failure to adjudicate documents alone is grounds for a new trial, and default of the U.S. Government. *U.S. Constitution.*

### IV. *MEMORANDUM***, AND** *NOTICES OF LODGINGS*

This *Ex Parte Application* is lodged, and this *Memorandum* serves as *Notices of Lodging of the Applications*, and *Ex Parte Application Orders.* Also, in compliance with the *Local Rules*, enclosed is listed, the contact information for all Attorneys of Record, in this matter. We have conferred with all Counsels, on the

filing of this *Application,* in writing.  Additionally, this *Reply* was served properly, via the ecf Court system, on all Parties of Record.


*Attorneys of Record:*


MS. KRISTIN A. LINSLEY,

klinsley@gibsondunn.com

MR. AUSTIN SCHWING,

aschwing@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP

555 Mission Street, Suite 3000

San Francisco, CA 94105-0921

Telephone: 415.393.8200

Facsimile: 415.393.8306

Attorneys for Defendants

Nike Inc., Facebook Inc., and Gibson Dunn Inc.


MS. AMY CANDIDO

acandido@wsgr.com

WILSON SONSINI GOODRICH AND ROSATI P.C.

11          *Reply to Second Ex Parte Applications, and Request*

One Market Plaza Suite 3300

San Francisco, CA 94105-1126

Tel: 415-947-2000

Fax: 415-947-2099

Attorney for Alphabet Inc.


MR. DANIEL A. BECK

Daniel.Beck@usdoj.gov

Assistant United States Attorney

Federal Building, Suite 7516

300 North Los Angeles Street

Los Angeles, California 90012

Telephone: (213) 894-2574

Facsimile: (213) 894-7819

Attorney for U.S. Government


## V. CONCLUSION.

In conclusion, the Court, here, should expediently send all three of these conflicted Defendants, and Alphabet Inc., a strong canonical communication, in respect to: plead felonies, triple conflicts, admission to the Court, and repeated

12          *Reply to Second Ex Parte Applications, and Request*

violations of the *Local Rules*, and *Judge's Standing Order*.  Moreover, punitive damages are necessary, here, to prevent these triple conflicted Defendants from engaging in repeated and future criminal conduct, conflicts and procedural violations.  *18 U.S.C. Section 1621.  18 U.S.C. Section 1832.  18 U.S.C. Section 1030.  Richmark. v.  Waits v. Frito Lay Inc*., 978 F.2d 1093 (9th Cir. 1992).  *In Re American Airlines v.*

We also request that the Court, here, rise up, and strike the improper filing from the U.S. Government.  In addition, it should default the U.S. Government for the same amount of compensatory and punitive damages for inadvertent engagement in: felonious conduct, removal of due process, illegal personal financial interrogatories, unadmitted Counsel, and for failing to produce disseminated evidence, gathered in the pre-discovery period.  *Id.  Federal Rules of Evidence 408.  Lopez v. First Union National Bank of Florida*, 129 F.3d 1186 (11th Cir. 1997).  These default should be platitudinous for such illicit criminal and blatant procedural violations.

13          *Reply to Second Ex Parte Applications, and Request*

Respectfully submitted,

*/s/ Benjamin Woodhouse*
Benjamin Woodhouse esq.
2369 Kronprinsends Gade, Ste. #8
Charlotte, VI. 00801
805 478 1958
California Bar #261361

14          *Reply to Second Ex Parte Applications, and Request*

**EXHIBIT B**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:21-cv-06372-SB | Date: | 11/24/2021 |
|---|---|---|---|

| Title: | *Benjamin Woodhouse v. The United States Government et al.* |
|---|---|

| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |
|---|---|

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:    [In Chambers] ORDER ON DEFENDANTS' MOTION TO DISMISS**

Plaintiff Benjamin Woodhouse is a lawyer licensed to practice in the State of California and owner of a company called Havensight Capital, LLC (Havensight). Acting as an attorney for Havensight, Plaintiff has engaged in a course of abusive litigation against Nike, Inc. and Facebook, Inc. that has resulted in substantial sanctions against him and his company and orders declaring his company a vexatious litigant. This lawsuit is a part of that history, and Plaintiff now seeks to extend the abuse beyond Nike and Facebook to include others he has encountered in the path of his misguided crusade.

## PROCEDURAL BACKGROUND

On August 6, 2021, Plaintiff filed this action against Nike, Facebook, their counsel Gibson Dunn & Crutcher LLP, Alphabet, Inc., the United States Government, the Chief Justice of the United States, and a number of federal judges in this district and the Ninth Circuit. Compl., Dkt. No. 1. He brings—as he has many times before—several claims for tortious conduct, including intentional

inflection of emotional distress, negligence, fraud on the court, and intentional interference with economical prospective advantage.  *Id*. at 46–64.

Aside from asserting claims previously raised and dismissed, the complaint contains a stream of nonsensical and imagined allegations—including accusations of government torture and assassination attempts.  Plaintiff explains that his complaint has two parts:

> The first part, brings Federal Claims against the United States Federal Government for: repeatedly endangering the Plaintiff's life, incorporating the Plaintiff into Government terrorist response strategies without consent, in a terrorist criminal situation, failing to respond with proper Federal procedures after known attempted assassinations on the Plaintiff's life, which the Plaintiff witnessed, intentionally inflicted bodily harm, Torture of the Plaintiff, with military grade weaponry, strategic and purposeful interference with private email communications in order to interfere with Plaintiff's economic gain, and interference of Plaintiff's trade relations with other Governments.

> The second part of the Complaint is for the U.S. Government's condoning, encouraging, and procuring of bribes, in exchange for, both, campaign favors from Facebook Inc., payments from Gibson Dunn Inc., and payments from Facebook Inc.'s ancillary companies, and consultants, to Judicial officers at multiple levels, and their respective contacts. Such alleged bribes, here, encompass but are not limited to: cash payments to Judicial officers and their respective associates, paid receptions, hiring of Judicial clerks in quid pro quo schemes, and procured favors, both, to sitting Judges, and across a network of Judicial officers. We also allege improper video surveillance within private property of the Plaintiff's family members by the conflicted Parties in this action. Facebook Inc. and its hired consultants, here, allegedly contracted with numerous Firms in: North Dakota, South Dakota, Idaho, and Montana, to create artificial businesses, in order to transfer compensation to Judicial officers, and in order to gain judicial favors from Government Leaders, who represented those economically challenged States.

*Id*. at 2–4.

Much of the facts alleged arise out of the same issues and claims that have been before multiple judges in this district over the past six years. Plaintiff's history of frivolous filings as counsel for Havensight is well established and extensively recorded in the vexatious litigant orders issued against Havensight by Judge Real, *Havensight Cap. LLC v. Nike, Inc. (Nike II)*, No. CV 14-7153-R, 2015 WL 3544111 (C.D. Cal. Apr. 22, 2015), and Judge Olguin, *Havensight Cap., LLC v. Facebook, Inc. (Facebook I)*, No. CV 17-6727 FMO (MRWx), 2018 WL 6340757 (C.D. Cal. Sept. 24, 2018).

Judges Real and Olguin imposed pre-filing conditions as part of their vexatious litigant orders. Judge Real ordered that Havensight obtain "permission from this Court prior to filing any action that arises from or relates to Havensight Capital LLC and its brand 'St. Thomas F.C.' against Nike, Inc." *Nike II*, 2015 WL 3544111, at *6. A few years later, after further abuse, Judge Olguin required that Havensight:

> (a) obtain written authorization from a District Judge or Magistrate Judge of this Court prior to filing any lawsuit in the United States District Court for the Central District of California against Facebook Inc. based on any allegation related to online advertisements, unfair business practices, anticompetitive conduct, fraud, tortious conduct, negligence, or racketeering; and (b) deposit $5,000 as security with the Court to secure the payment of any costs, sanctions, or other amounts which may be awarded against plaintiff or its counsel.

*Facebook I*, 2018 WL 6340757, at *20.

As Havensight's owner and counsel, Plaintiff appealed Judge Olguin's order dismissing the lawsuit, and the Ninth Circuit found the dismissal proper under the "doctrine of claim preclusion." *Havensight Capital LLC v. Facebook, Inc. (Facebook II)*, 776 F. App'x 420, 421 (9th Cir. 2019). The Ninth Circuit also found that Havensight had submitted "frivolous" filings in the district court and rejected Havensight's "unpersuasive" arguments on appeal—repeated by Plaintiff in this action—that "Facebook's counsel has alleged conflicts of interest." *Id*. Plaintiff filed three motions for rehearing, all of which were denied, with the Ninth Circuit adding that "no further filings will be entertained in this closed case." Declaration of Austin Schwing (Schwing Decl.), Dkt, No. 46, Ex. 21. Havensight then filed two more motions to reconsider, which the Ninth Circuit declined to entertain. *Id*., Ex. 22.

In this case, Plaintiff decided to file a lawsuit in his own name without complying with any of the pre-filing conditions imposed on his company, Havensight. Defendants Facebook, Nike, and Gibson Dunn (collectively, Defendants) move the Court to: (1) declare Plaintiff and any business he owns a vexatious litigant with respect to Facebook, Nike, and Gibson Dunn; (2) impose a pre-filing order requiring Plaintiff to obtain permission from this Court before filing any further actions against Defendants; (3) require Plaintiff to post security for the payment of any costs or sanctions awarded against Plaintiff; (4) hold Plaintiff in civil contempt for his failure to pay sanctions imposed by other judges in this district; (5) impose additional sanctions against Plaintiff; and (6) refer Plaintiff to the California State Bar. Notice of Motion, Dkt. No. 46, at 4–5. For the reasons below, the Court **GRANTS** Defendants' motion.

## DISCUSSION

### A.   Vexatious Litigant

Defendants ask the Court to declare Plaintiff and any business he owns to be a vexatious litigant with respect to Nike, Facebook, and Gibson Dunn.

"Flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *DeLong v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990). Such abuse also unfairly imposes costs and burdens on its victims. For this reason, district courts have the authority to issue vexatious litigant orders under 28 U.S.C. § 1651(a). *See DeLong*, 912 F.2d at 1148 (noting the statutory source of this authority). Prior to imposing restrictions on a litigant, a court must:

> (1) give litigants notice and "an opportunity to oppose the order before it [is] entered"; (2) compile an adequate record for appellate review, including "a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed"; (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as "to closely fit the specific vice encountered."

*Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014) (quoting *De Long*, 912 F.2d at 1147–48). Once pre-filing conditions have been imposed, a plaintiff's failure to follow them warrants dismissal. *See Menez-*

*Valenzuela v. Arizona*, 436 F. App'x 827, 828 (9th Cir. 2011) (affirming dismissal because plaintiff failed to comply with vexatious litigant orders); *Bak v. Brennan*, 2017 WL 6550870, *2 (C.D. Cal. Sep. 25, 2017) (noting that dismissal is appropriate for failure to comply with vexatious litigant orders). The Court considers each requirement below.

First, Plaintiff has had a full opportunity to be heard. A court may satisfy this due process requirement by allowing a party to be heard either through a "written submission" or at "an oral or evidentiary hearing." *Windsor v. Boushie*, 677 F. App'x 311, 312 (9th Cir. 2017). Both were provided here: Plaintiff filed an opposition to Defendants' motion to declare him a vexatious litigant, and the Court held a hearing on November 12, 2021. Plaintiff was present at the hearing and addressed the request to declare him a vexatious litigant and hold him in civil contempt. The Court also invited a supplemental submission on the contempt question.

Second, there is an existing record of abuse warranting an extension of the previously imposed vexatious litigant orders. "An adequate record for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). Plaintiff's history of filings in prior related matters is recounted in other prior vexatious litigant orders. *Facebook I*, 2018 WL 6340757, at *2–9; *Nike II*, 2015 WL 3544111, at *2–5.[1] Rather than repeat that history here, the Court incorporates it by reference. Moreover, since filing the instant action, Plaintiff has submitted at least fifteen filings in addition to his responses in opposition to Defendants' motions, including seven requests for default, eight summons requests, and several requests for the Court to take judicial notice that Defendants' "conflicted counsel" are not members of the local federal bar. Dkt. Nos. 4, 7, 10, 11, 14, 16, 18, 20, 21, 26, 32, 33, 34, 35, 40, 48, 57. The Court believes there is an adequate record to review the basis for the determination made in this case.

Third, the reasons for finding that Havensight's filings were frivolous apply equally here. The Court's previous orders declaring Havensight a vexatious

---

[1] As requested, the Court takes judicial notice of the orders and filings in Plaintiff's prior Havensight litigation. Schwing Decl., Exs. 2–19, 21–22, 24–27. *See Facebook I*, 2018 WL 6340757, at *4 n.6 (noting propriety of taking judicial notice of court records in determining vexatious litigant question).

litigant were grounded in Plaintiff's harassing, frivolous, and unethical conduct.  In this lawsuit, Plaintiff has continued to submit filings of the type previously found to be frivolous:  (1) bringing claims clearly barred by res judicata (such as the negligence and intentional interference with prospective economic advantage claims against Facebook), (2) asserting factual contentions that are "false, unsupported by evidence, or unlikely to be supported by evidence," and (3) requesting "default against defendants who had already answered or moved to dismiss." *Facebook I*, 2018 WL 6340757, at *17–18; *Nike II*, 2015 WL 3544111, at *4–5.  Plaintiff has also continued his attempts to coerce a settlement from Defendants, *see, e.g.*, Schwing Decl., Exs. 33–34 (noting offers of settlement for $43,150,000 and $94,520,000), despite having been warned about his misconduct in doing so*, see Nike II*, 2015 WL 3544111, at *2 (admonishing Plaintiff for attempting to "coerce a settlement based upon lies—yes, lies—that [he] had received a default judgment for several hundred million dollars" (internal quotation marks omitted) (quoting Judge Wright)).[2]  Further, when the Court allowed the parties to file supplemental briefing on Defendants' request to hold Plaintiff in civil contempt, Plaintiff responded only briefly to the limited question presented and instead improperly filed an *ex parte* application for default against the United States and others and disclosed his intent to file a motion for "obstruction" and Rule 11 sanctions against Defendants.  Dkt. No. 57.

Though Plaintiff has filed this action in his own name, Havensight and Plaintiff are alter egos and in privity with one another.  An alter ego relationship requires "(1) that there be such unity of interest and ownership that the separate

---

[2]  On motions for contempt and motions to declare a party a vexatious litigant, the Court may consider relevant evidence.  *See Benyamini v. Blackburn*, No. 2:13-cv-0205 MCE AC P, 2017 WL 1090165, at *7 (E.D. Cal. Mar. 23, 2017) (relying on evidence the plaintiff previously submitted in opposition to the defendants' motion for summary judgment in considering vexatious litigant motion); *Armstrong v. Brown*, 939 F. Supp. 3d 1012, 1019–22 (N.D. Cal. 2013) (considering evidence submitted with the parties' briefs on a motion for contempt); *Wilson v. Martin*, No. CIV 06-0830 ALA P, 2007 WL 2318127, at *2 (E.D. Cal. Aug. 10, 2007) (allowing the defendants to "present the necessary evidence in a re-filed motion to declare [the plaintiff] a vexatious litigant").  The settlement offers in this case may be considered in evaluating Plaintiff's conduct and whether there is a unity of interest between him and Havensight.  *See* Fed. R. Evid. 408 (offers may be considered for a purpose other than "to prove or disprove the validity or amount of a disputed claim").

personalities of the corporation and [its owner] no longer exist, and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1249 (9th Cir. 2017) (cleaned up). Relevant factors for this fact-specific analysis include

> inadequate capitalization, commingling of funds and other assets, holding out by one entity that it is liable for the debts of the other, identical equitable ownership, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

*Id.* at 1250 (internal quotation marks omitted) (quoting *Smith v. Simmons*, 638 F. Supp. 2d 1180, 1191 (E.D. Cal. 2009)).

Plaintiff is "principal, manager, and counsel of record" for Havensight, which "has filed at least ten lawsuits in this District against large corporations and even a foreign state." *Facebook I*, 2018 WL 6340757, at *2, *18. Havensight is "Plaintiff's owned investment firm," Compl. at 40, and its SEC filings identify Plaintiff as Havensight's executive officer, promoter, and director. Schwing Decl., Ex. 11. Havensight's website identifies only "Mr. Benjamin Woodhouse, Director," *id.*, Ex. 28, and LinkedIn lists only one person associated with Havensight Capital—Benjamin Woodhouse, *id.*, Ex. 29.[3] Plaintiff also consistently references his affiliation with Havensight: his emails to Defendants' counsel include a signature line identifying him as "Ben Woodhouse Havensight Capital," *id.*, Exs. 30, 32, 37–39, and the settlement offers in those emails identify the potentially settling "Parties" as Nike, Facebook, and "Havensight Capital LLC," *id.*, Exs. 33–34. Moreover, Plaintiff requested that the settlement funds be paid to Havensight. *See, e.g.*, *id.*, Ex. 33, at 1 ("Nike Inc. will pay via electronic transfer, **$43,150,000.00** to Havensight Capital LLC, into the bank account designated by Havensight Capital LLC."). The settlement offer also states that it is "specifically for the alleged Tort of Negligence, which specifically caused property damage to Havensight Capital LLC." *Id.* Plaintiff sent a similar draft settlement to

---

[3] As requested, the Court takes judicial notice of Havensight's website and SEC filings. *See Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (SEC filings subject to judicial notice); *Arroyo v. AJU Hotel Silicon Valley LLC*, No. 20-cv-08218-JSW, 2021 WL 2350813, at *2 (N.D. Cal. Mar. 16, 2021) (a party's website and its contents are proper subjects for judicial notice).

Facebook.  *Id*., Ex. 34.  He also forwarded Havensight's bank account wiring information for the settlement, demonstrating that there is no financial separation between Plaintiff and Havensight.  *Id*., Ex. 35 (Havensight's redacted bank account information).

In addition, Plaintiff is bringing this lawsuit in his own name for alleged harm to Havensight, treating the company as indistinguishable from himself.  He refers to Havensight seven times in his complaint to describe how Havensight was supposedly harmed by Defendants or the U.S. government.  Compl. at 7, 40, 43, 53.  And in the parties' Joint 26(f) report, Plaintiff indicates that he intends to seek discovery relating to the alleged conduct of Nike, Facebook, and Gibson Dunn underlying the previous lawsuits by Havensight against Nike and Facebook.  Dkt. No. 51, at 7–13 (requesting discovery on "contact between Nike Inc. and Havensight Capital's prospective Customers," "all meetings . . . involving Havensight Capital," and "use of any private jets to transport any Judicial Officers in relation to any matter concerning Havensight Capital").  Significantly, Plaintiff in his opposition does not dispute that he and Havensight are alter egos; in fact, he appears to further confirm their unity of interest by asking the Court to reopen "all cases involving the Plaintiff, its Havensight Capital L.L.C. Firm, and these conflicted Defendants."  Opp., Dkt. No. 48, at 2.[4]

When a party uses its alter ego corporation "to continue with his misuse of the litigation process . . . , compelling interests in equity warrant the conclusion

---

[4] It also worth noting that it was Plaintiff's misconduct that led to the Court's previous vexatious litigant orders.  *Facebook I*, 2018 WL 6340757; *Nike II*, 2015 WL 3544111.  Plaintiff, as Havensight's counsel, was admonished by several judges in this district for his practice of serially filing frivolous papers.  Indeed, three judges imposed Rule 11 sanctions against Plaintiff for his misconduct, including making frivolous legal and factual arguments and making false statements.  *See Havensight Capital, LLC v. Nike, Inc. (Nike I)*, 2015 WL 993344 (C.D. Cal. Feb. 18, 2015) (Real, J.) (imposing Rule 11 sanctions); Schwing Decl., Ex. 4 (Mar. 31, 2015 Order of Wright, J. ordering payment of $1,000 to the Court under Rule 11 and 28 U.S.C. § 1927); Schwing Decl., Ex. 25 (Sept. 22, 2015 Order of Real, J. ordering payment of $89,729.01 to Nike); *Facebook I*, 2018 WL 6340757, at *13–15 (Olguin, J.) (imposing Rule 11 sanctions); Schwing Decl., Ex. 26 (Nov. 9, 2018 Order of Olguin, J. ordering payment of $71,269.89 to Facebook).  Judge Wright further warned Plaintiff that if he filed another repetitive motion he would be reported to the state bar—which Judge Wright then did after Plaintiff's subsequent failure to comply.  *Nike II*, 2015 WL 3544111, at

---

that [the company is also] subject to the vexatious litigant law." *Say & Say, Inc. v. Ebershoff*, 20 Cal. App. 4th 1759, 1769–70 (1993) (applying the alter ego doctrine to "hold the corporation responsible for the actions of the individual who dominates and controls it"). The same principle holds true here in reverse: Plaintiff initially used his company to pursue a campaign of frivolous litigation, and now attempts to substitute himself in his company's place. But Plaintiff "so dominates and controls [Havensight] that there is no longer any separation between the conduct of the individual and the corporation." *United Computer Sys., Inc. v. AT&T Corp.*, 107 F. App'x 818, 820 n.3 (9th Cir. 2004) (citing *Say & Say, Inc.*, 20 Cal. 4th at 1768–70).

Thus, the Court finds that Plaintiff and Havensight are the alter egos of one another. To conclude otherwise on the facts of this case is to allow Plaintiff—or any like-minded vexatious litigant—to seriously weaken the force of a vexatious litigant order. The Court further finds that Plaintiff—both in this action representing himself and in prior litigation as counsel for Havensight—has engaged in an unceasing practice of filing frivolous and harassing papers that constitutes an abuse of process that has "wasted the resources of the parties and the court." *Facebook I*, 2018 WL 6340757, at *19.

Fourth, while Plaintiff has demonstrated beyond doubt that he is a vexatious litigant, "the pre-filing order must be narrowly tailored to [his] wrongful behavior." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1061 (9th Cir. 2007). A court "should consider whether other, less restrictive options, are adequate to protect the court and parties." *Ringgold-Lockhart*, 761 F.3d at 1064. The ordinary tools available to curb litigation abuse, including admonitions and sanctions, have proven ineffectual in deterring Plaintiff. His persistence in the face of escalating sanctions demonstrates that more drastic measures are necessary to limit the irreparable harm Plaintiff appears intent on inflicting. If there were any doubt about Plaintiff's unwillingness to comply with lesser sanctions, this lawsuit has removed it. Despite the undisputed fact that he is the alter ego of Havensight, Plaintiff has filed an action in his own name for the transparent purpose of trying to circumvent two vexatious litigant orders. *See* discussion *supra*.

A tailored response to Plaintiff's latest maneuver requires a broader order declaring Plaintiff and any company he owns to be a vexatious litigant. In

---

*1 (recounting Judge Wright's warning to Plaintiff in a prior case); Schwing Decl., Ex. 4 (Mar. 31, 2015 Order of Wright, J. reporting Plaintiff to the state bar).

addition, the order must be extended to protect Gibson Dunn, which has been brought into the litigation because of its representation of Nike and Facebook. The Court finds that a modified vexatious litigant order akin to the one issued in *Facebook I*, 2018 WL 6340757, at *20, is necessary to protect Defendants from Plaintiff's harassment. And if Plaintiff files another lawsuit against Defendants, there will be an automatic stay to allow the Court to evaluate whether the lawsuit falls within the scope of this order. This stay will alleviate the need for Defendants to respond to Plaintiff's voluminous, frivolous filings, which is expensive and burdensome. Accordingly, the Court finds that the pre-filing order that will issue in this case is narrowly tailored to address Plaintiff's misconduct.

Finally, Defendants request that Plaintiff be required to deposit $5,000 with the Court "to secure the payment of any costs, sanctions, or other amounts that may be awarded against Plaintiff." Notice of Motion at 5. "There is no specific provision in the Federal Rules of Civil Procedure relating to security for costs. However, the federal district courts have inherent power to require plaintiffs to post security for costs." *Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994). Judge Olguin previously required Havensight to post a $5,000 security upon finding that Havensight was "a vexatious litigant and there is no reasonable probability that plaintiff will prevail, as the court is dismissing the action." *Facebook I*, 2018 WL 6340757, at *19. He found that the amount requested was reasonable "given plaintiff's record of post-dismissal motions and other filings in prior cases it litigated in this district." *Facebook I*, 2018 WL 6340757, at *19. This Court makes similar findings here: Plaintiff is a vexatious litigant; he filed this lawsuit in violation of vexatious litigant orders; he has no reasonable probability of prevailing in this case; and a $5,000 pre-filing security requirement is necessary to protect against future abuse. In the event that Plaintiff claims he is unable to pay the pre-filing security deposit, he may file an application to proceed in forma pauperis for purposes of being relieved of this payment obligation.

## B. Civil Contempt

Defendants ask the Court to hold Plaintiff in civil contempt for violating the pre-filing conditions in the prior vexatious litigant orders and for failing to pay sanctions ordered by judges in this district.

A court may find a party in civil contempt if "(1) [the party] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *In re*

*Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). A district court "has wide latitude in determining whether there has been a contemptuous def[ianc]e of its order." *Stone v. City of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) (internal quotation marks omitted) (quoting *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984)). The moving party must demonstrate by clear and convincing evidence that the alleged contemnor violated "a specific and definite order of the court." *Id*. at 856 n.9. The burden then shifts to the opposing party to demonstrate that "they took every reasonable step to comply." *Id*. The contempt "need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d at 695.

The Court finds Plaintiff in civil contempt for violating the prior vexatious litigant orders. Plaintiff brings claims that arise out of the same allegations made in the prior litigation under Havensight's name. Plaintiff did so without complying with the prior vexatious litigant orders; instead, he filed a lawsuit in his own name in an apparent effort to circumvent those orders. A party may not evade vexatious litigant orders through subterfuge. *See Tangwall v. Compton*, No. 4:18-CV-00007-SLG, 2020 WL 2527930, at *1 (D. Alaska May 18, 2020) (vexatious litigant may not evade pre-filing requirements by using "other individuals and entities to make filings on his behalf"); *Pierce v. Trump*, No. CV 17-07267-R (RAO), 2018 WL 1220925, at *1 (C.D. Cal. Mar. 6, 2018) (same). Nor does the use of such a ploy provide a safe harbor for contemnors. *See, e.g.*, *Hawaii Masons' Health & Welfare Fund, Etc. v. Dynamic Interiors, LLC*, No. 14-00434 LEK-RLP, 2016 WL 5219453, at *3 (D. Haw. Sept. 20, 2016) (holding the defendant directly liable for civil contempt sanctions against his company because they were alter egos); *Fed. Trade Comm'n v. Data Med. Cap., Inc.*, No. SA CV 99-1266 AHS (EEx), 2010 WL 1049977, at *22 (C.D. Cal. Jan. 15, 2010) (holding that the defendant's corporation was bound by and in contempt of the permanent injunction issued against the defendant because allowing the corporation "to circumvent" the injunction "would frustrate [its] equitable purposes . . . , undermine the inherent authority of this Court to enforce its orders, and be an 'inequitable result'"); *Fed. Trade Comm'n v. Gill*, 183 F. Supp. 2d 1171, 1184–85 (C.D. Cal. 2001) (holding the defendant's "sham corporation[]" in contempt for violating the injunction issued against the defendant because they were alter egos). Here, Plaintiff and Havensight are alter egos of one another, and Plaintiff had notice as Havensight's counsel of the pre-filing requirements of the vexatious litigant orders. Thus, the Court finds that Plaintiff is in civil contempt for violating the pre-filing conditions of the vexatious litigant orders. *See Shalaby v. Bernzomatic*, No. 3:11-cv-0068-AJB, 2019 WL 3843003, at *2 (S.D. Cal. Aug. 15, 2019) (granting motion for

contempt against plaintiff who violated court's prior vexatious litigant order); *Sepehry-Fard v. Select Portfolio Servicing, Inc.*, No. 14-CV-05142-LHK, 2016 WL 4436312, at \*9 (N.D. Cal. Aug. 23, 2016) (same).

Defendants also seek a finding of civil contempt for Plaintiff's failure to pay sanctions in the amount of $161,9998.90 imposed against him for his misconduct in prior litigation.[5]  In opposing the contempt motion, Plaintiff had not argued that he was unable to pay the sanctions, much less provide evidence of such inability. He first asserted this defense at the contempt hearing.  A contemnor may defend against a finding of contempt by showing a present inability to comply.  *See United States v. Rylander*, 460 U.S. 752, 757 (1983).  "[O]ne petitioning for an adjudication of civil contempt does not have the burden of showing that the respondent has the capacity to comply." *N.L.R.B. v. Trans Ocean Exp. Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973).  Rather, under Ninth Circuit law, the contemnor must establish "categorically and in detail" why he is presently unable to comply with the court's order.  *F.T.C. v. Affordable Media, LLC*, 179 F.3d 1228, 1241 (9th Cir. 1999) (internal quotation marks omitted) (quoting *Trans Ocean*, 473 F.2d at 616). "Ability to comply is the crucial inquiry, and 'a court should weigh all the evidence properly before it determines whether or not there is actually a present ability to obey.'"  *United States v. Drollinger*, 80 F.3d 389, 393 (9th Cir. 1996) (quoting *Donovan v. Mazzola*, 761 F.2d 1411, 1418 (9th Cir. 1985)).

Because Plaintiff had not asserted the inability-to-pay defense until the hearing, the Court provided the parties with an opportunity to address this defense in a supplemental filing.  In response, Plaintiff only briefly addressed the issue, asserting that he has limited funds and "no additional assets to present."  Dkt. No. 57 at 9.  This assertion falls far short of satisfying Plaintiff's burden of establishing "in detail" why he is unable to pay the imposed sanctions.  *Trans Ocean*, 473 F.2d at 616.  Based on the current record, Plaintiff appears to be in civil contempt for failing to pay the sanctions.  Nevertheless, the Court will permit Plaintiff to supplement the record to demonstrate his inability to pay and reminds him that he has the burden of production.  If Plaintiff wishes to pursue this defense, he must provide sufficient evidence of his inability to pay, including:

---

[5] Schwing Decl., Ex. 25 (Sept. 22, 2015 Order of Real, J. ordering payment of $89,729.01 to Nike); *id.*, Ex. 4 (Mar. 31, 2015 Order of Wright, J. ordering payment of $1,000 to the Court under Rule 11 and 28 U.S.C. § 1927); *id.*, Ex. 26 (Nov. 9, 2018 Order of Olguin, J. ordering payment of $71,269.89 to Facebook).

(1) all bank statements for Plaintiff or any of his companies for the last six months; (2) all statements for any investment accounts (e.g., stocks, bonds, or mutual funds) held by Plaintiff or any of his companies for the last six months; (3) the most recent tax returns for Plaintiff and all of his companies; (4) an accounting of any real estate or vehicles that Plaintiff or any of his companies owns; and (5) a sworn declaration under penalty of perjury that he has produced true and correct copies of all the required documents.

See *Schmidt v. Baldy*, No. CV 16-9368 DSF (AGRx), 2019 WL 8219482, at *2 (C.D. Cal. Apr. 17, 2019) (noting a court's ability to order adequate proof of inability to pay). Plaintiff may file these materials under seal, and Defendants shall keep the materials confidential. If Plaintiff elects to supplement the record, he must file and serve the required documents **by no later than December 22, 2021**.

Defendants further request that the Court impose sanctions for Plaintiff's civil contempt, including compensatory sanctions for attorney's fees, expenses, and costs, and coercive sanctions of $100 per day to be paid to the Court until the sanctions are paid. Motion at 21–22. "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)). Coercive sanctions are payable to the court and are designed to coerce the party in contempt to come into compliance. *Id*. Plaintiff has demonstrated time and again his refusal to comply with court rules and orders, even when sanctions are threatened and later imposed. However, the Court declines to impose coercive sanctions at this point in light of the absence of information about Plaintiff's ability to pay and its concern about his mental fitness.

Compensatory awards, on the other hand, are payable to the opposing party and "are limited to 'actual losses sustained as a result of the contumacy.'" *Gen. Signal Corp.*, 787 F.2d at 1380 (emphasis omitted) (quoting *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983)). Further, "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Accordingly, the Court will award sanctions, for violating the vexatious litigant orders and under Section 1927, in the amount of reasonable attorney's fees and costs incurred in

defending this action, including the filing of this motion. **By no later than December 8, 2021**, Defendants shall submit an application with adequate documentation of attorney's fees and costs incurred along with a sufficiently detailed proposed order. If Plaintiff wishes to challenge the amount that Defendants request, he must do so **by no later than seven days after Defendants file their motion**.

### C.     Bar Referral

Plaintiff is a member of the State Bar of California. Multiple federal judges have reviewed filings submitted by Plaintiff and have expressed serious concern about his repeated misconduct. One district judge previously referred Plaintiff to the State Bar. *See* Schwing Decl., Ex. 4 (Judge Wright's 2015 referral of Plaintiff to the California State Bar). That referral, made six years ago, produced no apparent result.

It is no exaggeration to say that Plaintiff's behavior is concerning, and it is obvious that his conduct warrants attention. Even a cursory review of his filings raises a serious question of Plaintiff's current fitness to practice law. His often non-linear filings contain erratic, bizarre, and nonsensical accusations—including allegations that U.S. military personnel instructed strangers to sexually harass him and that the U.S. government repeatedly attempted to assassinate him by, among other things, attempting to fly a fighter jet into him while he was studying on an Australian beach. Compl. at 33, 36. At the hearing in this case, Plaintiff repeatedly strayed from questions asked and appeared to perseverate on "the national security apparatus" and other nonsensical matters.

This matter demands appropriate review, consideration, and action to protect the public. The Court therefore directs the clerk to **REFER** this matter to the California State Bar for a determination of whether to initiate proceedings against Plaintiff Benjamin Woodhouse.

### CONCLUSION

For the foregoing reasons, Defendants' motion is **GRANTED** and Plaintiff's complaint is **DISMISSED with prejudice** as a violation of the Court's vexatious litigant orders. **IT IS HEREBY ORDERED** that:

1.     The Court declares Plaintiff to be a vexatious litigant who is precluded—either directly or indirectly through an entity he owns or

controls—from filing in the U.S. District Court for the Central District of California (CDCA) any action for claims described below against Nike, Inc., Facebook, Inc.,[6] and Gibson Dunn & Crutcher LLP, and each of their respective employees, directors, officers, attorneys, or partners (the Protected Parties), absent strict compliance with the terms set forth in this paragraph. Specifically, Plaintiff shall: (1) obtain written authorization from a CDCA District or Magistrate Judge prior to filing any lawsuit in the CDCA against the Protected Parties for claims asserting government corruption or conspiracies or any issues or allegations raised in previous litigation in which Havensight was declared a vexatious litigant, including online advertisements, unfair business practices, anticompetitive conduct, breach of contract, misappropriation of trade secrets, infringement of intellectual property, fraud, tortious conduct, negligence, or racketeering; and (2) deposit $5,000 with the clerk of the court to secure the payment of any costs, sanctions, or other amounts that may be awarded against Plaintiff. The Protected Parties need not respond to any future lawsuit or filings by Plaintiff or any of his businesses unless and until this Court decides whether the lawsuit falls within the scope of the vexatious litigant order and should be permitted to proceed.[7]

2. The Court finds Plaintiff to be in **civil contempt** for violating the prior vexatious litigant orders and appears to be in civil contempt for failing to pay sanctions ordered by other judges in this district. Plaintiff shall have until **no later than December 22, 2021** to provide sufficient evidence of his present inability to pay the outstanding sanctions. If Plaintiff wishes to provide sufficient evidence of his inability to pay, he must provide: (1) all bank statements for Plaintiff or any of his companies for the last six months; (2) all statements for any investment accounts (e.g., stocks, bonds, or mutual funds) held by

---

[6] Facebook, Inc. has since changed its name to Meta Platforms, Inc. Dkt. No. 55, at 2 n.1. To avoid confusion, the Court refers to Defendant as Facebook, Inc., but the Court's Order applies equally to any action involving Meta Platforms, Inc.

[7] To the extent that it is not obvious whether Plaintiff has filed a lawsuit against a Protected Party (e.g., a Nike employee not specifically identified in this lawsuit) or whether Plaintiff has filed in the name of a business he owns, the Protected Party should file a notice of protection under this order with a brief explanation.

Plaintiff or any of his companies for the last six months; (3) the most recent tax returns for Plaintiff and all of his companies; (4) an accounting of any real estate or vehicles that Plaintiff or any of his companies owns; and (5) a sworn declaration under penalty of perjury that he has produced all of the required documents and has not altered them in any way. Plaintiff may file these materials under seal, and Defendants shall keep the materials confidential.

3.    Plaintiff is ordered to pay Defendants' reasonable attorney's fees and costs expended in defending this action, including the filing of this motion. **By no later than December 8, 2021**, Defendants shall submit an application for attorney's fees and costs with a sufficiently detailed proposed order setting forth the fees and costs they incurred in defending this action and any necessary documents supporting a reasonable request for attorney's fees and costs. If Plaintiff wishes to challenge the amount that Defendants request, he must do so **by no later than seven days after Defendants file their motion**.

**EXHIBIT C**

Mr. Benjamin Woodhouse
2975 Kronprindsends Gade Suite. #8
Charlotte, VI. 00801.
805 478 1958
California Bar #261361

## THE CENTRAL DISTRICT COURT OF CALIFORNIA

Mr. Benjamin Woodhouse, A Citizen of )    Case No.: 2:21-cv-06372

the United States, Resident of the U.S. )

Virgin Islands )   **Plaintiff's *Complaint*.**

           Plaintiff, )

                )

      v.

The United States Government, the
Chief Justice Hon. John Roberts, Acting
as a Government Official, a District of
Columbia citizen, Gibson Dunn Inc., A
California Corporation, Facebook Inc.,
a Delaware Corporation, Nike Inc., a
Delaware Corporation, Alphabet Inc., a
California Corporation, the Hon.
Andrew D. Hurwitz, Government
Official, Acting as a Government
Official, resident of Arizona, the Hon.
Jacquelyn Nguyen, Acting as a
Government Official, resident of
California, the Hon. Fernando Olguin,
Acting as a Government Official, the
resident of California, the Hon. Manuel

1     *COMPLAINT*

Real, Acting as a Government Official,

resident of California, Hon. Philip

Gutierrez, Acting as a Government

Official, and resident of California, the

Hon. Richard Paez, Acting as a

Government Official,  resident of

California, and the Hon. Sidney

Thomas, Acting as a Government

Official, resident of Montana,

   Defendants

_____

**COMPLAINT.**

**I.  INTRODUCTION.**

**Part I.**

   The Plaintiff, here, brings an action against the United States Government,

Gibson Dunn Inc., and Facebook Inc., among other Defendants.  The *Complaint* is

in two parts, but as the Claims and named Defendants are related, it is in the

interest of Justice and economies to bring this action as One.  Further, both Claims

have an underlying nexus of discrimination.  The first part, brings Federal Claims

against the United States Federal Government for: repeatedly endangering the Plaintiff's life, incorporating the Plaintiff into Government terrorist response strategies without consent, in a terrorist criminal situation, failing to respond with proper Federal procedures after known attempted assassinations on the Plaintiff's life, which the Plaintiff witnessed, intentionally inflicted bodily harm, Torture of the Plaintiff, with military grade weaponry, strategic and purposeful interference with private email communications in order to interfere with Plaintiff's economic gain, and interference of Plaintiff's trade relations with other Governments. *U.S. v. Hylton*, 2009 WL 136867. (Negligent endangerment of person found by the District Court). *18 U.S.C. Section 2340A*. *18 U.S. Code Section 1590*. *25 C.F.R. Section 11.426*. *18 U.S.C.A. Section 9045*. *D.O.J. 13-1332* (D.O.J.) (Defendant charged with furnishing materials to commit terrorism). *U.S. v. Ramsey*, 431 U.S. 606 (1972). (Warrant required to read private party's mail).

The second part of the *Complaint* is for the U.S. Government's condoning, encouraging, and procuring of bribes, in exchange for, both, campaign favors from Facebook Inc., payments from Gibson Dunn Inc., and payments from Facebook Inc.'s ancillary companies, and consultants, to Judicial officers at multiple levels, and their respective contacts. Such alleged bribes, here, encompass but are not limited to: cash payments to Judicial officers and their respective associates, paid receptions, hiring of Judicial clerks in quid pro quo schemes, and procured favors,

both, to sitting Judges, and across a network of Judicial officers.  We also allege improper video surveillance within private property of the Plaintiff's family members by the conflicted Parties in this action.  Facebook Inc. and its hired consultants, here, allegedly contracted with numerous Firms in: North Dakota, South Dakota, Idaho, and Montana, to create artificial businesses, in order to transfer compensation to Judicial officers, and in order to gain judicial favors from Government Leaders, who represented those economically challenged States.

Additionally, Campaign contributions are specifically referenced in the Federal Bribery statue, and sufficient, here, to constitute a violation.  *18 U.S.C. Section 201.  Reyes v. Atlantic Richfield Co.*, 12 F. 3d 1464 (1993).  The *Complaint* also concerns specifically the alleged illegal taking of bribes by all of the named Government Judicial officers, across various matters.  These Judicial Officers, and Staff, allegedly frequently met with Gibson Dunn Inc. and Facebook Inc. personnel, without any opposing Counsel's presence consistently.  Such alleged illegal bribes materially impacted the legal rights of the Plaintiff's company, and **ultimately resulted in the 9th Circuit's removal of private records and conflict checks from U.S. case law – a basic core foundation of the fabric of our entire society, in *Case No. 18-56304, and No. 18-56607*.  The loss of private records and conflicts checks has caused irreparable harm to the American people, and**

4    *COMPLAINT*

**a National security structure cannot be maintained with a 9th Circuit case that obliterates private records.**

Furthermore, these bribes are alleged to be paid by Members of: Gibson Dunn Inc., Facebook Inc., and Facebook Inc.'s contractors. Facebook Inc. and Gibson Dunn Inc. are known to use a host of consulting companies, and hired forensic firms, which specialize in improper contacts with Judicial officers. These Judicial officials span all levels of the Courts, including our purported highest-level Judicial Leader, and operate within a patterned and systematic framework, which has been implemented by Gibson Dunn Inc.'s Leadership and Facebook Inc.'s Leadership, along with its hundreds of millions of dollars a year legal case contractors.

Furthermore, alleged contacts between Gibson Dunn violators, and Chief Justice John Roberts are also lucid, and surpass the level of judicial prudence, and decency. The Chief Justice, here, even allegedly takes calls from Ms. Cheryl Sandberg, on a regular basis, which serves no purpose, and calls into question the Chief's mental fitness for the position. Such impropriate actions, include but are not limited to, specifically alleged: paid receptions by Gibson Dunn Inc., hiring of Supreme Court clerks into Gibson Dunn Inc., in a quid pro quo scheme, and procured favors, which spans an entire Judicial network from California to Washington D.C. **Chief Justice Roberts allegedly had multiple**

**communications with Gibson Dunn personnel around Plaintiff's cases, and believed that Parties, in weaker economic positions could be defeated, even in the wake of felonies and historic conflicts, under his Machiavellian dictatorship, blatant disregard for the future of Law Students nationwide, and sycophant relationship with Gibson Dunn funders.** He forgot he serves the American People, and not a handful of alleged morally defunct attorneys at specific behemoth Firms. A Judicial Clerk of the Hon. John Roberts was hired into the Dallas office of Gibson Dunn, here, as part of such a quid pro scheme. **This is one of the many reasons why the People Republic of China's Government, and many other major Government Leaders have chosen frequently, not to do business with Facebook Inc., as their alleged propensity to "bribe Government officials," is a material threat to the subsistence of any major Government.**

The Plaintiff also brings an action for deliberate Fraud on the Court, against Facebook Inc., and Gibson Dunn Inc. respectively for failing to disclose payments to Mr. Barack Obama, and Ms. Hillary Clinton, which is material as they were, either, the Presidential nominator, or, then spouse of the Presidential nominator, of the alleged bribed Judicial officers, at both, the District Court level, and the Appellate level in various matters. *18 U.S. Section 1001.* Facebook Inc. and Gibson Dunn Inc., here, also failed to disclose improper contacts and meetings

6 *COMPLAINT*

with, both, Appellate, and District Court level Judicial Officers, and Clerks, in direct violation of the *California Bar Rules. Id. Model Rules of Attorney Conduct*. Gibson Dunn Inc.'s counsel failed to confer at all, across cases, as they believed that there alleged paid bribes would wield victory, even in the face of plead felonies and a triple conflict.  **The only time Gibson Dunn conferred, was to bark down the phone at a 9th Circuit mediator in an offensive manner, and insult the integrity of the 9th Circuit appellate process.**

**Additionally, Gibson Dunn Inc. allegedly, both, hired a past employee of its Firm in the U.S. Virgin Islands so that they could impersonate Plaintiff's Counsel in, both, matters, in addition to withholding smoking gun Memos, around price fixing in one matter, which M.T.O. Counsel had already communicated to Havensight's Counsel existed, and had come into their possession at the inception of the matter.  We also allege that hired Virgin Island Counsel was instrumental in allocating bribes on Gibson Dunn's behalf to Judicial Officers.**  Moreover, allegedly having paid a bribe, Gibson Dunn Inc. also failed to confer, and routinely denied its triple conflicted Clients of the ability to retain independent Counsel, despite multiple requests by the Plaintiff.  **It was never even possible in this matter for the Plaintiff to structure a settlement agreement when all three almost trillion dollar defendants, were represented by the same Gibson Dunn Counsel, despite having diametric interests.  Such**

**conflicts demonstrate an arrogance around such bribery, which is abysmal and disgusting**.

In parallel, a Facebook Inc. Director, also, paid $100MM for a $20MM home of an Entertainment executive director's home, initially before the ruling was published. As this bribe involves third party contact, with the Appellate Court, it is within the purview of the U.S. Attorney to investigate this transaction, in connection to Judicial interference. Nevertheless, the Court should recognize that the bribery schemes alleged, here, are not limited, either, to the triple conflicted Defendants, or, the crooked Law Firm, they are comprehensive and multi participatory. The U.S. Attorney needs to create a special task force to create policies, which require, and maintain separation between the Supreme Court, Appellate Court, and Judicial Officers and large law firm Leaders, and Leaders of trillion dollar companies.

In fact, Gibson Dunn Inc. Leaders allegedly routinely boast about this fact, and their respective prowess, in manipulating Judicial officers through Client slush funds, and fake accounts, which they classify for Supreme Court challenges. Such a practice, consequently, here, ended private records, and conflict checks permanently in the practice of law, via the Appellate Court's defective and **terse allegedly bribed 2 in 1,** *Memorandum*, **which even specifically cited to non-existent legal Appellate filings.** Let it be known that feigning confusion, is not a

panacea for taking bribes.  The 9th Circuit, there, also ended private records, not by offering legal authority, but by positing that stolen emails were, "not persuasive." *Appellate Court Memorandum in Case 18-5603*.  **Plead felonious conduct is always "persuasive," when 9th Circuit Judges legalize felonious conduct, Judicial bribery has reached a point that is completely untenable and sends a signal to other World Governments that we are totally corrupt.  *Id*.**

This felonious action, here, reinforces the iron communist like grip of Gibson Dunn Inc., and the Largest Tech Companies in America, over the Judiciary of the United States, and other counterparts in the economy.  Moreover, the United States government has subsequently inadvertently eroded its regulatory power, as a result of witnessing, and condoning this bribery, in direct violation of Federal Anti-Bribery Statues.  *Id*.  While this case, makes no political arguments, **Facebook Inc., here, has lobbied for, and succeeded, in removing civil liability specifically and explicitly just for themselves, in Canada and Mexico, from the North American Trade Agreement, which recently replaced N.A.F.T.A., and will likely lobby the legislature to remove the legal profession in the coming years from U.S. statutory law – Judicial bribes are not the only issue, the very existence of a legal system, which dates back to feudal England is now almost completely eradicated as a result of the 9th Circuit's inability to function in any capacity**.  In short, our Judiciary is now mirroring, those of third world

9     *COMPLAINT*

countries, and is not only making a mockery of U.S. Leadership, but also oppressing many, who borrow millions, and sacrifice time with family to pursue a now completely defunct legal profession.  In fact, Facebook Inc. is an incredible 47 and zero with absolutely no settled cases and no remands in the California Appellate Court, in one meaningless matter involving a California County, the Judge actually ordered an O.S.C. against Facebook Inc.'s Counsel and then two weeks later, suddenly changed his mind, and chose to rule for them in an epitome of the Court's total lack of volition.  **U.S. Law Students have no future, and unfortunately, they do not have an ability to take action against these Appellate Judges, who have lined their respective pockets, and propped up the Montana economy with the bribes from Gibson Dunn.**

Moreover, non-disclosed payments to high ranking former Presidential executive office, former first ladies, and high-ranking appointed U.S. State officials, who coincidentally also appointed the alleged bribed Judges in question, here, were also paid by Facebook Inc. and Gibson Dunn Inc.  *U.S. v. Russo*, 104 F.3d 431 (1997). (Lying to impede due administration of justice, was obstruction). This conduct should be grounds for immediate discovery, around undisclosed conflicts.  **In one instance, in a case involving another Party, Facebook Inc. hired the Magistrate Judge assigned to the case, while the case was pending, in an act of complete disregard for the Judicial system which is hard to even**

**contemplate.  I am unsure why they have not also hired the Appellate Judges in this matter yet.**  Many Judges are sitting out of jurisdiction in the 9th Circuit, which has been deemed illegal by the Supreme Court, because the 9th Circuit are allegedly exchanging bribes with other Jurisdictions, to make the bribery scheme more expansive, in a scene that makes me want to close the 9th Circuit indefinitely, and seek National security prison terms for many of its Members.

**Just to be precise and comprehensive: Facebook, in this matter, here, filed documents late, failed to serve any Appellate documents, filed a *Brief* that was too long, filed a *Brief* late based on its failure to serve, failed to confer on its *Demurrer* in the State Court, argued facts in default at a *Demurrer* hearing, failed to write Counsel's name in the State Court, improperly used *See* in its *Appellate Motion*, which was not served, created the first triple conflict in legal history, failed to set the *Appellate Record*, argued a case in its *Brief* that did not stand for its position, routinely had improper contacts with the Court, removing a *Motion* from the District Court, after failing to respond, and plead the felonious taking of emails across two of the three conflicted matters, and prevailed with sanctions.**

Finally, the allegedly bribed Appellate Court's ending of conflict checks, and private records, here, seriously quell all Plaintiff's speech, and calls into question the future operability of a legal profession.  This suit is filed, not only to

assert the rights of the Plaintiff, but also to encourage stewards of the legal profession to step up, and protect the independence of U.S. Courts, which are not being safeguarded at the same pace as the growth of burgeoning tech companies. **When felonies and conflicts prevail, it makes us a mockery to the entire world, even Countries, which have bribery as part of its customs, still have more responsible Courts than of those based in the United States**.  Law Students should be refunded their tuition by the United States Government, until the Government can restore some decency back to the Judiciary.  **Moreover, the Plaintiff asserts that the Hon. John Roberts might have allegedly specifically engaged in bribery in this matter, in retaliation for the Plaintiff's dissention at endangering his life, and criticism of the U.S. Government's torture tactics.**

Furthermore, all of these felonious acts, have jeopardized the public, safety and well-being of all Americans, and parallel the alleged Judicial bribery, here, which has ended private records, and conflict checks in case law.  This matter speaks to the rights of private citizens to be free from homicidal government negligence, and the tyranny of trillion-dollar defendants, whose Leaders are not intelligent enough to surreptitiously dole bribes, and provide consideration for their loquacious and bombastic pay to play system.  **Judges need to learn how to follow procedure when they take bribes, and not constantly move pre-maturely constantly in reaction to bribes.**  The moral defectiveness of all of this

behavior, is like Facebook Inc., and Nike Inc. board members, each, collecting handouts from the Chinese Government, while denying opportunities for small business owners, and then running around accusing others of looking for handouts. Such behavior disgraces our Country and dishonors all Americans, much like the Appellate and Supreme Court has done.

Additionally, Facebook Inc., and Gibson Dunn, here, allegedly, and the other two conflicted Parties in this matter, on an imputed basis are liable for, the continued running down, and interference with prospective Customers. **The Plaintiff alleges that Facebook Inc. and Gibson Dunn paid consideration to a banking firm, which the Plaintiff was attempting to confer with, on a public offering, concerning one of its portfolio companies. Facebook Inc. and the three conflicted Clients, should all be held liable for this offering. Further, the Plaintiff also alleges that almost every single prospective and current Customer was contacted by Facebook Inc., and Gibson Dunn, via contractors, after Facebook Inc. feloniously accessed the Plaintiff's business email, and obtained the Plaintiff Customer information.**

Moreover, if such illegal accessing of the Plaintiff's email, and bribing prospective Bankers and Customers not to do business, with the Plaintiff was not enough, these triple conflicted Companies, here, actually worked in coercion, with U.S. Secret Service Agents, to sexually harass the Plaintiff, and consistently harass

the Plaintiff with people of a homosexual orientation, when the Secret Service and Defendants, were well aware that the Plaintiff was heterosexual.  Further, the Defendants failed to disclose any of this sexual torture in coercion with the Secret Service, and it is both alleged and believed that they engaged in it, as part of a compensatory scheme with Judicial Officers.  Chief John Roberts will have to answer for this, as it is alleged that he directed the Secret Service to engage in illegal behavior.

**Further, lower level State Judges, and Federal Judges, both, were engaged in participating in the harassment, in return for sexual favors procured from prostitutes that Facebook Inc. and the Secret Service had procured, as part of this very brain damaged quid pro scheme.**  Facebook Inc. and Gibson Dunn continued to engage in these activities, with Secret Service, even after the Plaintiff warned all Parties in writing that such a scheme was illegal, and that Quasi U.S. Government Security Agencies would not allow Gibson Dunn and the Secret Service to end private records and conflict checks, as part of a quid pro quo bribery scheme, one where Judges participated in the economic spoils of covering up felonies, and attacking small Business Leaders.

**The Plaintiff also alleges that Gibson Dunn, either, with, or, without, the knowledge of the Secret Service, planted cameras in a guest bedroom of the private residence of a family Member for the Plaintiff, and a bathroom, and**

14    *COMPLAINT*

**even responded to the camera, while surveilling the Plaintiff at a hotel across the street.  This was an act of very minimal brilliance, and beyond puerile and atavistic on many levels.**  The conflicted Defendants, here, made no representation to refute such an allegation, on attempted conferrals.  Moreover, such conflicted cohesion among: Secret Service, Judicial Officers, and Gibson Dunn, which was acting as an agent for the three trillion dollar conflicted companies, is not in the interest of the U.S. Government, and portends, not only the end of the legal profession, but very dangerous future macro economic risks.

## Part II.

The Plaintiff additionally alleges that the U.S. government illegally injected the Plaintiff into terrorist response situations for unknown reasons and with malicious attempt to harm the Plaintiff. Specifically, here, the United States Government also failed to, either, assist, or, follow proper Government safety procedures, after the Plaintiff witnessed, multiple blocked assassination attempts on his life, which were executed as a direct result of the U.S. government's public endangerment of the Plaintiff.  The initial set of assassination attempts occurred, while the Plaintiff was studying in his final year of his Law school training in

Malibu, CA., but such attempts also occurred in Sydney, Australia, while the Plaintiff unsuccessfully tried to escape U.S. government persecution.

Moreover, the Plaintiff requested assistance from the U.S. Government after each one of these initial assassination attempts, via liaisons with Pepperdine Law Leadership, which represented to be in communication with National security directives from the Executive Branch of the United States Government.  The Plaintiff did not have direct knowledge of these communications, and erroneously assumed that Pepperdine Leadership was capable of making reasonable risk assessments.  Further, such witnessed assassination attempts include, both, attempts from private criminal actors, and later by foreign sovereign military personnel after the Plaintiff's graduation from Law school at the direction of foreign governments.  These murder attempts were a direct result, of the U.S. Government negligently inserting the Plaintiff into National security matters, which did not concern the Plaintiff, and which the Plaintiff was astute enough to actively avoid.

Moreover, these assassination attempts were witnessed on multiple occasions by the Plaintiff, and it is likely that other unwitnessed attempts, also occurred.  The U.S. government had full knowledge that it was recklessly endangering of a then private U.S. citizen, whose rights were protected under the *U.S. Constitution*.  Additionally, the Plaintiff was instructed, not to alert Law

school classmates, and others about imminent threats and dangers, after these assassination attempts, and this caused severe emotional distress.

The Plaintiff also vehemently disagreed with the U.S. Government, and Pepperdine Law Leadership, advocating for the immediate closure of Pepperdine law school to only essential Faculty, Administration, and Students, after the second attempted hit on his life, and the murdering of special warfare personnel. Consequently, the U.S. Government retaliated for voicing this dissention. National Security gallant was championed, over the safety and well-being of the Plaintiff, and his fellow Pepperdine law classmates at each, and every turn.

In addition, the *Complaint* is also brought for acts of torture against Plaintiff, in subsequent series to the initial public endangerment.  These acts of torture include but are not limited to, sexual torture, and torture via the illegal use of, either, U.S. Air Force, or, Naval aircrafts in Californian airspace, which were flown over the Plaintiff's household, and used to burn the body and skin of Plaintiff, utilizing specialized and classified weapons for a period of three months. Known to Military personnel as "the Flash," this barbaric special weapon, shows up as a square flash of silver light from the military aircraft, before the victim is burned, via some kind of thermal heating system which is fired down, the Plaintiff can present witnesses, who can attest to the Plaintiff's screams from the burning, which occurred after he firing of the weapon, which happens instantaneously.

Such burning, in this instance, includes all extremities of the body, as the weapon targets close to 30% of the entire body when utilized, and its use is a direct violation of the Geneva convention on torture. The weapon was fired while the Plaintiff resided in Danville, California, after subsequent graduation from Pepperdine law school over a three-month period and then briefly while the Plaintiff was in Sydney, Australia. Each, and every remembered attack was executed at night.

Further, there were three attempts to "flash and burn" the Plaintiff, while the Plaintiff was residing in Sydney Australia, but the weapon was inoculated, after the first attempt, by some type of solar panel affixtures, which were placed on the Plaintiff's apartment roof by a South Korean intelligence contingent, after the first attack, and the Plaintiff witnessed the South Koreans climbing the roof with these blocking devices. Whether the South Koreans were part of a United Nations funded group, and operating at the request of United Nations Leadership, is unknown. The Plaintiff concedes that he could not identify the air crafts used in, either, the attacks in Australia, or, the U.S. as the planes were above the roof of the Plaintiff, but the special weapon was identical in nature in each and every respect, across attacks, and the Plaintiff believes that the attacks were U.S. military strikes. There have been no further aerial attacks since the Plaintiff left Australia in 2010.

A discovery process will determine if members of the Secret Service Government Agency, played a role in the retaliatory acts, against the Plaintiff.  The Plaintiff intends to make discovery requests, directed to the office of the Secret Service General Counsel, once this case advances, after sending repeated warnings in writing.  The requests pertain to the Secret Service providing escorts to Judges at Gibson Dunn's expense, logging onto the Plaintiff internet networks, and organizing homosexuals to harass the Plaintiff, when the Agents were aware that the Plaintiff was heterosexual.  The U.S. Attorneys in this matter, should advise the Office of the Secret Service in writing that the Plaintiff has filed this Suit, and does not wish Secret Service Personnel, to come within 50 miles of the Plaintiff for any reason whatsoever and at any time, unless required by law to do so, on credible evidence, in order to protect assigned U.S. elected officials, Supreme Court Justices, and State dignitaries.

**Additionally, the Court, here, should move on its own to issue injunctive relief independent of the Plaintiff's request for relief, which directs the U.S. Government to remove all and any of the following: National Security, Central Intelligence Agency, Military of any Branch, Secret Service, and any Government protective details from, either, surveillance, or, purported protection of the Plaintiff, without an issued warrant by a Federal Judge which specifically states a logical purpose for the monitoring of the Plaintiff.**

**The Plaintiff wants no offered protection from any U.S. government entity whatsoever, and wants any and all Military personnel, Central Intelligence Agency, or even Secret service personnel ,to be imprisoned if they come in proximity of Plaintiff without just cause and an issued warrant, and to cease and desist all activity immediately.  *See Steve Jackson Games, Inc. v. US Secret Service*, 816 F. Supp. 432 (W.D. Tex. 1993).  The Plaintiff does not seek the Court to move on its own to enjoin United Nations personnel, and such personnel for monitoring of future Geneva Convention violations.  The Plaintiff also requests that the Judge cite to the death penalty for any use of Department of Defense tech on the Plaintiff, without specific authority to, either, from the Executive Branch, or, a Judicially issued warrant.**

Furthermore, this torture was further complimented with funding from Government agencies, which were used to violate the Plaintiff's access to electronic communications-interfering, with economic gain, and defaming the Plaintiff to private actors.  **The Plaintiff alleges that his Alphabet Inc. emails were directed to Department of Defense personnel and Pepperdine University Leadership Associated Personnel, for no reason, and without consent, instead of the intended recipients.**  These personnel also misrepresented themselves and responded to these communications as the intended recipients.  **Ironically, and collaterally, the Department of Defense might find some legal defense, in the**

20   *COMPLAINT*

**recent eradication of private records by the Appellate Court, as a result of Judiciary bribery.** *Case No. 18-56304.*

The Plaintiff specifically found electronic communication responses to be uniform and identical, despite the diversity of recipients.  Often, responses to electronic communications were unhelpful, and followed glib script.  The Plaintiff never ever consented to allowing, any of the following: the Department of Defense, U.S. government, Associated individuals with Pepperdine University and its Leadership, or any other Party, as a private citizen, to control his personal Gmail account.  This is why Alphabet Inc. is a named Party in this matter, in conjunction with Gibson Dunn's Inc.'s bribery of Judicial officials, while engaging in conflicted representation.

The U.S. government also engaged, in addition, in psychological torture against the Plaintiff, which included but was not limited to, the U.S. government utilizing the military to direct large numbers of individuals of a homosexual orientation from around the World to attempt to meet the Plaintiff, despite the Plaintiff, who is heterosexual, specifically choosing not to meet any of these individuals, recruited by the U.S. Government.  The U.S. Government was aware that the Plaintiff was heterosexual, and there was no logic behind these actions, other than harassment.  Why other foreign Governments were complicit with, this practice, and helped to fund this practice, is unknown?  Moreover, it is the

Plaintiff's legal opinion that such a course of action, further endangered his life with this introduction of unnecessary surveillance from non-government actors, who were being consistently recruited by Government personnel for harassment. The Plaintiff is heterosexual, and there is no further need for the U.S. military or intelligence Agencies to waste U.S. government money in recruiting People of a homosexual orientation that are non government actors, specifically for the purpose of trying to harass and torture the Plaintiff.

Moreover, the Plaintiff also alleges that the U.S. Government, either, worked in concert, or, was complicit with harassment from Mr. Branson, who in an attempt to help known terrorists in the National Security matter, attempted to fund torture of the Plaintiff.  Specifically, the U.S. Government orchestrating Mr. Branson's bet with a Russian counterpart for a space shuttle on the sexuality of the Defendant, in order to torture the Defendant, and cleverly couple it with D.O.D. technology use, which was constantly applied to the Defendant, in consistent and frequent fits of terrorist behavior by U.S. Government Personnel.  The torture program was comprehensive, spanned continents, and was even implemented on holidays such as Christmas.  It was applied with consistent 24/7 application.  **This is the basis for the Court moving on its own, here, to enjoin these U.S. Agencies, Department of Defense, and Military from having any contact whatsoever with the Plaintiff.**

Moreover, the Plaintiff was also intimidated through these practices, and encouraged to disengage any business relationship with the People's Republic of China, which inherently damaged the economic opportunities for the Plaintiff.  The Plaintiff was encouraged to ignore Chinese officials, and disengage with business trade, and private placements of Capital, with threats of further retaliation against the Plaintiff, if trade with Chinese officials was enacted.  Eventually, the U.S. government would encourage Chinese officials to join them in their harassment of the Plaintiff, on the basis that they were funding civil liberties for others, and that promoting the business interests of others, would in turn champion an elitism, which was more in step with Asian business class structures.

Further, the U.S. Government, here, further retaliated against the Plaintiff, ending private records and conflict checks at the Appellate law level, in a matter involving the Plaintiff's investment firm, and trillion-dollar defendant, Facebook Inc.  There, the Appellate Court failed to enforce the felonious conduct of Facebook Inc., in retaliation for the Plaintiff's dissenting against the public endangerment.

Moreover, the U.S. government also allegedly had full knowledge of Facebook Inc. and Gibson Dunn Inc., paying bribes through independent contractors to, both, Judicial officials, and their respective relatives, and acquaintances, at the District and the Appellate Court levels, along with organized criminals.

23   *COMPLAINT*

Further, the U.S. Government allegedly complied at all levels, with the Appellate Judicial offices to specifically end the legal profession, and to erase basic legal tenet foundations, with a spiteful intention to restrict the Plaintiff from having the economic resources, to report the alleged torture and the public endangerment.  Additionally, the U.S. Government had full knowledge that Gibson Dunn Inc. and Facebook Inc., along with its contractors had made payment to former highly elected officials, including Presidents, and Secretaries of State, who had a role in appointing the Appellate Judges.  These specific conflicts in addition to the already triple conflicted status of Facebook Inc. in this matter, were never disclosed to the Plaintiff, and the Judiciary and Facebook Inc., both, intentionally served to undermine democracy, and free speech by allowing this practice to continue at, both, the District Court, and Appellate Court levels.  **This point is further solidified by the 9th Circuit, upholding a prison sentence for a Defendant, named Mr. Sing for the stealing of private records, only to rule months later against the Plaintiff, and uphold the felonious stealing of counsel emails by Facebook Inc., in the bizarre ending of private records.**  *U.S. v. Sing*, 16-50221 (9th Circuit 2018).

Moreover, Sing's counsel should cite to our Appellate *Memorandum*, and garner the Defendant's immediate response.  It should also be noted that not only did Facebook Inc.'s counsel, not go to prison for the same conduct, but she failed

24   *COMPLAINT*

to make any offer of settlement at any point in the case, suggesting that she truly believed Facebook Inc. had taken full control of the Appellate Court, without any chance of independent supervision.

**The Plaintiff is not trying to demonize Judicial officers with this filing, as it is a noble and complex position, it is simply stating that when a Defendant prevails after: committing felonies, being triple conflicted, filing late documents, failing to serve Appellate documents, arguing a case that does not stand for their position, arguing facts in a *Demurrer* hearing, on a Demurrer not conferred upon, and filing a Brief too long, the Appellate Court is no longer functional in any capacity, and the U.S. economy simply cannot sustain a singular attorney, who is committing felonies, and representing every major trillion dollar Company at once.** *18 U.S.C. Section 201. 18 U.S.C. Section 1962.*

Moreover, it should be noted, even if Executive powers cloaked some components of the U.S. Government's conduct in its public endangerment and torture, there is no Government immunity, to the bribery of Federal officials by private actors, and in the name of furthering Government targeting, at the expense of the rights of the public, and the U.S. economy.

Finally, the Plaintiff also moves the Court to order discovery, before ruling on the Government initial dismissal document, and allow the Plaintiff to recover the satellite imagery, and communications from the United States Government's satellite resources, which exist, and prove cash payments to relatives of Judicial Officers at, both, the Appellate, and District level, in conjunction with those of known Leaders of Organized criminal entities, who have known connections to select Judicial Officers.  Further, all satellite imagery showing Judicial officers visiting Gibson Dunn personnel should also be recovered upon subpoena.  Additionally, the Statue of Limitations does not preclude this action, as all tortious action has continued from the 2008 time period to the present.

## II. <u>VENUE AND SUBJECT MATTER JURISDICTION</u>

Venue is proper, here, as this is the District in which the torts took place, specifically in Los Angeles.  *28 U.S. Section 1391.*  Subject matter jurisdiction is proper, here, as the torts arise from violations of Federal Statues.  *18 U.S. Code Section 201.*

## III.   <u>STATEMENT OF FACTS</u>

# STATEMENT OF FACTS A.

In the third year of Plaintiff's Law school training at Pepperdine Law School, in the fall of 2008, an organized criminal by the name of Mr. Rafiello Follieri, who at the time was a reputed Italian organized criminal moved into Malibu, CA.  He commenced bringing large amounts of organized criminals into the small beach town to intimidate local residents, shortly after his arrival.  His presence was easy to identify in the small town, as European agents, on rare branded motorcycles frequently followed him around Malibu.  Around four weeks into the start of the last semester of the Plaintiff's law school training, Mr. Follieri was seen by Plaintiff traveling to the residential premise of Pepperdine University's then acting President, Mr. Andrew Benton, in a Black B.M.W., who was known to Plaintiff, and whose residence is situated in close proximity to the Pepperdine law campus.

Additionally, Mr. Benton's daughter was a law school classmate, and Mr. Woodhouse and Mr. Benton had met at various School functions in the normal course of Mr. Benton's duties, and Mr. Woodhouse Law Student candidacy.  That evening, Mr. Benton emailed the Plaintiff, who was a third year Pepperdine law Student on his Pepperdine issued email account to request that the Plaintiff show Mr. Follieri around campus, the following morning.  The Plaintiff failed to respond

to Mr. Benton's email, and opted not to host the reputed organized criminal the following morning, knowing that he was not a welcome acquaintance.

Further, Future events would lead the Plaintiff to believe that Mr. Benton had represented to the organized criminal that he was perhaps the highest-ranking Leader on the campus, and the appropriate person to negotiate with, over Follieri's attempt to take control over the private campus. The Plaintiff had witnessed Follieri's associates setting up surveillance posts, and road blocks, on the side of the only road into Malibu, shortly after his arrival, and had concluded, he was to be avoided at all cost. Such a representation by Mr. Benton to Mr. Follieri was not logical. While sitting in the Law Class, the following morning, Mr. Follieri sat directly behind Plaintiff, along with six other heavily set and possibly armed organized criminals, in an attempt to scare Plaintiff, and threaten bodily harm, which bizarrely embarrassed Plaintiff to his classmates.

Plaintiff subsequently ignored Mr. Follieri, refusing to make any communication to Mr. Follieri whatsoever, despite repeated attempts by him to confront the Plaintiff, in the Pepperdine's Law Library, and at other times on the Pepperdine Law campus. Mr. Benton then communicated to the Plaintiff that the situation was under control and that the U.S. Government, and Executive Branch, had been alerted to the unlawful presence of the organized criminal.

Moreover, the presence of the Criminal, also brought the arrival of voluminous organized criminals from various non related groups, and many of their respective Leaders, started to attempt to meet with Plaintiff, both, on and off the Pepperdine campus, as Mr. Benton had intimated that the Plaintiff was some kind of counter Terrorist Leader. The Law school turned into a "zoo" immediately, and it became difficult to navigate the small building. Plaintiff continued his daily routines, and about a week later, Plaintiff witnessed an assassination attempt on his life at his residence, late in the evening, in Malibu, CA., by a singular hit man, who carrying a hand gun attempted to breach the front door at the bottom of the Plaintiff's apartment. The hit man was then neutralized by a special military warfare officer, who was situated underneath the apartment, in a tandem grouping, and was stationed there, without, either, the Plaintiff's consent, or, knowledge. The hit was also carefully planned as it was a weekday and late in the evening, around 10:30 p.m. There was some kind of artificial loud party gathering on the other side of the parking lot of the Plaintiff's residence, which initially caught the Plaintiff attention as exceptionally inordinate and brought him to the window, to witness the assassination attempt.

Although, a singular hit man was utilized, it seemed that the hit was carefully planned, and that the loud noise emanating from a group of thirty or forty people gathered, around a limousine, was created specially to cloak the

29    *COMPLAINT*

assassination.  This was not someone acting alone.  The U.S. government then

failed to proceed to confer with the Plaintiff on safety options for himself, and his

classmates at that point, but the Plaintiff assumed that the blocked hit, had removed

this random future danger at that point, and that military presence would back

down any future such behavior.

Almost five days later, the Plaintiff returned from his work as an

entertainment law clerk internship late in the evening to find Mr. Follieri and four

organized criminals in five highly expensive automobiles parked in front of the

Plaintiff's apartment, blocking the entrance to his personal residence.  Initially,

Plaintiff attempted to blast his radio to its highest volume with the windows down

in order to scare the assailants from blocking the door to his personal residence.

After about four minutes, with no Party moving, the Plaintiff chose to rapidly pop

his trunk and exit his vehicle, and attempted to approach the entrance of his

apartment and the cars with assailants, the organized criminals, then immediately

fled the scene in their cars, and may have erroneously perceived the Plaintiff's

book bag to have contained weapons.  Plaintiff erroneously assumed that the

special warfare officers were waiting behind the assailants.  The Plaintiff then

noticed multiple military special warfare defense personnel, who were initially

situated under his apartment to be dead, and shaped in unnatural positions, and

there was an unusual amount of flies and oder, which protruded from the apartment

30     *COMPLAINT*

entrance. Plaintiff returned to his apartment to puke and cough up blood from his stomach. The Warfare personnel were then removed from the premises by Parties unknown to the Plaintiff in Government licensed vans in the early morning hours.

The following morning, the Plaintiff communicated to Mr. Benton's daughter that an immediate closing of the school to only required Personnel, and Students, was the proper choice of action. She replied that the situation was "under control" and that the Law School would remain open with my fellow classmates, not being apprised of any of the attacks. The Plaintiff had to ignore, and upset almost all classmates, as Mr. Follieri's associates were concurrently sitting next to the Plaintiff in most classes, after the multiple incidents at the Plaintiff's residence. Pepperdine Leadership had decided that inviting them to take the classes with the Plaintiff was the best course of action. This permanently damaged the relationship between Plaintiff and his classmates, and Pepperdine's Faculty, as Plaintiff had to shun all personnel and fail to show any connection to any Law School community Member. Moreover, the Plaintiff experienced death threats in the double digits, on a daily basis from a variety of organized criminals, during every course of every day life. Filling the Plaintiff's car with gas became a struggle, and could not be accomplished outside of Malibu in stations, which might be bordered by multiple streets and flowing traffic.

Further, it should also be stated for the record that although Mr. Follieri was publicly cited as romantically connected to public actresses in the media, during this time, the Plaintiff never met any of Mr. Follieri's female companions of any kind, and in any capacity whatsoever at any time. The Plaintiff does not believe seeing, either, any such linked Party, or, being in proximity to any such Party whatsoever, and the Plaintiff spent a majority of his time in the Law Library, and attending law classes, during this law school period. Plaintiff had a perfect attendance record and spent more than 12 hours a day in the Pepperdine law facility. Moreover, the Plaintiff has never tried, either, to interact with any of Mr. Follieri's personal contacts at any point in time, or, come within proximity to any of his personal contacts.

Further, only the defendants listed are currently Party to this Suit, and the Plaintiff does not specifically allege that the U.S. Government tortured the Plaintiff, in retaliation, to protect the identities of any public figures, who might have been linked to Mr. Follieri, and might have had pecuniary interest to Movie Studios. It is unknown whether it is coincidental that the Universal Studios Head sold his $20MM house to a Facebook Director for $100MM, with alleged promises of favors to a certain Hispanic American actress, in return for Judge Paiz ending private records and conflict checks.

The Plaintiff also asserts under oath that he has never traversed in his three years of residency in Malibu, on any private property not completely open to the commercial public, other than Pepperdine's law campus, and his personal residency, except for once at an Open house in 2005, and once in 2017, both, with a respective real estate agent's complete supervision.  Moreover, Plaintiff rarely spent time in public places in Malibu, except for grocery shopping, and periodic meals at fast service restaurants.  **Ironically, whether rumors of Mr. Follieri and his associates alleged stalking of the actor Mr. Heath Ledger, a Los Angeles resident at the time, is the reason why he took his own life, is not raised in this Complaint.**

The Plaintiff then completed his law studies without further incident, but gradually started to experience harassment and beyond hazing from the U.S. military, predicated on the concept that perhaps the Plaintiff had been pretending to be a Naval warfare officer, which seemed strange as the Plaintiff had attended all law school classes, and was a private acting law Student, seeking employment as an attorney.  Warfare officers wear military clothing, and clandestine service officers, never reveal their employer, thus such allegations were not very rational. This harassment included frequent visits by unknown people of homosexual orientation, encouraged by the U.S. military in retaliation for some kind of fear of future heroic recognition, despite the military, knowing that the Plaintiff was

heterosexual and had purposefully abstained from sexual relations for a period of four months to protect his classmates, and friends, under surrounding circumstances.

Moreover, military personnel were instructed to have total strangers yell, "fun" at the Plaintiff in a very illogical manner, predicated on some kind of rumor that the Plaintiff had intimated that this heinous experience was fun, which had no merit, this practice continued for almost six years, in public places, and was dubbed across television shows by the U.S. Government. **The stress of the overall terrorist incident is one that nobody reading this _Complaint_ could ever contemplate, which still has never actually ended.** Additionally, the Plaintiff voiced his concern, to both, the Department of Justice in San Francisco, who told him to complete a questionnaire, and to multiple Senators, via correspondences, shortly after graduating law school and in proximity to the incident.

Also, the Plaintiff contacted the U.S. Senators, after the Military continued to create diagrams of penises on the Plaintiff's Garmin G.P.S. system, which utilized a route highlight system, both, in the late evenings in unknown destinations, and in more than one instance while the Plaintiff was being pursued by organized criminal hit men, such that the Plaintiff could not navigate routes. Often, the Plaintiff would become increasingly more disoriented as the interferences would come intermittently, and randomly for absolutely no purpose

than harassment.  The Plaintiff returned, to his Parents residence in Danville, California, without a legal position, and uncertainty around his future, at which point the U.S. military commenced burning the Plaintiff in the middle of the night for three to four seconds bouts, utilizing specialized and clandestine, "flash" weaponry, which causes a silver square flash above the victim, before the burning occurs.  The Plaintiff was burned in his extremities, and on one evening, was burned multiple times by multiple flashes, meaning the aircraft returned to the spot of the initial torture.  The burning happened about three evenings a week over a two month period.

Consequently, the Plaintiff signed up for a graduate education Law program in Australia, and moved to Sydney Australia, to escape U.S. government persecution, and predicated on escaping the flash burning.  His intention was to become an Australian citizen.  There, either, from confusion as to whether the Plaintiff was, either, a government actor, or, encouraged by U.S. Government malfeasance, the Plaintiff witnessed multiple assassination attempts on his life.

Specifically, by gunfire into the window of the Plaintiff's apartment complex, and one attempt by a foreign military actor, who dropped down, utilizing a parachute onto the balcony of the Plaintiff's apartment, and affixed two canisters of lethal gas into the Plaintiff's window, which happened to be open, as the attack was not foreseen.  The Plaintiff suffered irritation to the chest and lungs and was

displaced from his apartment for a two week period.  Moreover, an organized criminal additionally brandished a weapon under a newspaper, with a silencer attachment, on a public bus in the last attack, while the Plaintiff was traveling to the University of Sydney, but the Plaintiff is unsure if the encounter was, either, intended, or, happenstance, unlike the other assassination attempts.

Finally, on a separate occasion, an unknown foreign government pilot banked a fighter jet around a 12 story apartment complex, 3 stories up, which oversees Bondai beach, and attempted to fly the plane into the Plaintiff's person, in order to scare the Plaintiff, while Plaintiff was studying on the beach.  Such a unique threat from a foreign government entity was: unprovoked, never apologized for, and caused serious distress to the Plaintiff.  It also made it more difficult for the Plaintiff to have social interactions with locals.  The assault with the foreign fighter plane was a direct result of Mr. Benton, and the U.S. Government's odd past conscription of the Plaintiff, and confusion around the Plaintiff's private citizen status.

**Further, the U.S. Government's decision to end conflict checks, and private records to aide and abet a trillion-dollar computer Leader's plead felonies, in the wake of their torts, makes the Judicial bribery in this case, even more spurious, and deeply personal.**

The U.S. Government likely had knowledge of all attacks, and did nothing to, either, assist the Plaintiff, or, provide assurances of safeguards against future attacks.  More importantly, the U.S. government also failed to follow procedural regulations.  As a result of these failures, the Plaintiff was negligently endangered, and suffered distress as a result.

Further, the Plaintiff returned to the U.S. and found similar tactics of harassment and interference, along with purposeful interference with economic gain.  Specifically, the Plaintiff noted that his emails were not being responded to by their respective recipients, but what seemed like a Department of Defense officer, who might have allegedly had connection to Mr. Andrew Benton.  The emails contained uniform responses and almost identical fonts, styles, and writing.  *U.S. v. Ramsey*.  Plaintiff is still unsure whether electronic communications are monitored and in what fashion.  Emails are sporadically sent thru, in bursts, and this issue has been exacerbated by the Defendant bring an action against Google, as one of the three conflicted Clients, for inconsistency in online ad pricing.

Moreover, the Plaintiff was intimidated into not doing business with officials from the People's Republic of China, who fund the growth and development of many of the Companies that the Plaintiff's investment firm competes with.  Frequently, when Plaintiff attempted to schedule meeting with these Leaders, they were, either, sent to wrong locations, or, prevented from appearing.  Eventually,

the U.S. Government convinced the People's Republic Leaders into not doing business with Plaintiff, and the Plaintiff frequently experienced increased bouts of interference with basic relations, after any attempt to do business with the People's Republic.  Plaintiff alleges that the Government also had knowledge that Mr. Benton collected money from the People's Republic of China, based on the concept that it would be used to protect Plaintiff from bodily harm.  Such a practice of extorting money from the P.R.C. Government, based on the reputation and good intentions of others, should not have been allowed, particularly as the Plaintiff struggled with food security and other financial issues.

Additionally, the stress caused from the harassment and the quasi terrorist behavior from the U.S. Government, has strained the Plaintiff's relationship with family members, and seriously inhibited the Plaintiff's ability to do business with foreign entities of all Nations.  Finally, the Plaintiff intends to request that: South Korean, Austrian, and Switzerland intelligence officials come to the U.S. District Court to testify to these above referenced statement of facts, as the Plaintiff believes that it is likely that these Leaders have substantial knowledge of many of the above referenced events, whether they witnessed them as a result of, either, the U.S. government's invitation, or, not, is unknown, but there presence was known, both, in the U.S. and Australia.

Additionally, the Plaintiff alleges that U.S. Government Officials gave access to Mr. Richard Branson, a British Citizen to our National security structure and orchestrated a bet, with the Russian Government, where Mr. Branson would win a space shuttle if he could prove the Plaintiff was not heterosexual, even when all Parties involved knew the Plaintiff was heterosexual. The bet was part of an intricate torture scheme that was implemented, against the Plaintiff, in order to protect criminal actors, who had committed crimes in proximity to the Plaintiff. Moreover, the Department of Defense Officials also participated allegedly in the scheme, using special weapons to harass the Plaintiff, in an attempt to prove emotional instability, and win retribution for National security occurrences. Such a scheme failed as the Plaintiff, here, likely was assigned protection from a National Security agency that superseded all referenced criminal Government actors, who in this case were not properly disciplined, and do not possess the logical capacity to be empowered with such special weapons.

Whether John Roberts, and the Defendant 9th Circuit Judges, here, attempted to end private records and conflict check to further this scheme, and whether their collusion with Gibson Dunn, was symbiotic to this scheme, has to be further determined in discovery. Then again, it is really of no consequence as to what the driving motivation for the ending of private records and conflict checks, and collusion was, only that the legal system currently has no volition. Private

record and conflict checks will be restored, via National Security protocols, and additional protocols need to be implemented, which can surpass the undue influence of these trillion dollar companies.


## **STATEMENT OF FACTS B.**


Havensight Capital L.L.C., which is the Plaintiff's owned investment firm, and consumer products retailing consortium, brought cases against Nike Inc., and Facebook Inc., as the Parties allegedly stole Havensight Capital L.L.C.'s trade name for its clothing brand, utilizing Nike F.c., a few months after the launch of its St. Thomas F.c., and for the tort of *Civil R.I.C.O.,* after Havensight Capital L.L.C. found material discrepancies in a trillion dollar Facebook's representations, on sales of website clicks, and nonsensical pricing variances. **The initial District Court, decided that Nike Inc.'s felonious entry of privileged communications, in which Nike Inc.'s counsel boasted about having sex with the wife of one of the Plaintiff friends and former classmate was clever, and that Havensight Capital L.L.C. should be sanctioned for raising the issue.**

Additionally, in the Facebook Inc. case, counsel from the same defense Firm, preceded to concurrently represent anti-trust Parties, and feloniously enter private records again in the same matter, and the District Court came to the same

conclusion that sanctions were in order for the filing of that Case. Both these rulings were then upheld by the Appellate Court, which in both cases failed to follow procedure, and moved pre-maturely to dismiss both matters, with incoherent Orders, which were both less than a page in length. In the Facebook Inc. Appellate case: Facebook Inc.'s counsel was triple conflicted, the District Court had cited to Facebook Inc.'s feloniously entered settlement offers, Facebook Inc. had feloniously taken other records, filed a document late, filed an *Appellee Brief*, which was too long, failed to set the record, argued a case that did not stand for their respective position, and failed to serve their *Brief*. The Appellate Court moved on its own to end private records, and conflict checks, without the response of Facebook Inc. to an Appellate *Motion*, signaling to the World that the Appellate Court had been bribed, and didn't even possess the common sense to follow Appellate procedure in the matter. Referenced, in this *Complaint*, is the Plaintiff's *Appellant's Brief*, in this matter, which ended private records, along with the defunct and deficient *Oral Memorandum*, which erroneously dismissed the action, which should have been dismissed with a proper order, which had been carefully deliberated over. **Finally, the Court decision to take the *Assignment Order* from the public record, demonstrates that it was aware that the Order was defective and believed the bribe could be covered up.**

Additionally, in the months leading up to the ruling in the Nike Inc. Appellate case, the Plaintiff was approached by people claiming to be associated with an Appellate Justice on the Panel, whose name is to be filed under seal in discovery, and requested money from the Plaintiff on two separate occasions, while the Plaintiff was exercising, on the campus of Cal Poly, in San Luis Obispo, California. The request, at the time, seemed comical, as a small business owner cannot match a trillion-dollar corporate in Judicial bribes, but in retrospect the matter seems incredibly serious now.

**Plaintiff contends that in all matters, in which the Courts patently demonstrated legally deficient and coerced rulings, including the Appellate Court's abolishment of private records, and conflict check permanently from the law, were motived from Gibson Dunn Inc.'s Leaders, and Facebook Inc. systematic payment of bribes to Judicial officials, and their relatives, and respective acquaintances.** Plaintiff alleges that Gibson Dunn Inc. intentionally, and preciously pays these bribes from slush funds set up by Clients, and allegedly boasts about such practices.

Moreover, the Judicial officers demonstrate in their frequent pre-mature rulings throughout all of the matters that the Judicial officers were under financial influence, and responding illegally to stock price movements for these trillion dollar defendants. The U.S. Government is requested to turn over satellite imagery

42    *COMPLAINT*

and communications, which exist, and captured these bribes, and which are known facts to the U.S. Government. For the U.S. Government to condone such practices, is a threat to national security that few seem to really understand. **While one could easily argue the manner in which the cases were adjudicated speak to potentially ineptitude and dementia, the fact that all matters were adjudicated in the same pre-mature and procedurally defunct manner, speaks to a broader picture of bribery, and to the Courts inability to exercise any discipline over trillion dollar defendants, not complete incompetence.**

Additionally, either, Gibson Dunn, or, Facebook Inc's contractors, at some point during the proceedings, allegedly hired Ms. Marjorie Roberts, an attorney in the U.S. Virgin Islands to impersonate Havensight Capital L.L.C.'s Counsel. Ms. Roberts was a former Gibson Dunn employee and worked with Gibson Dunn's Counsels to precipitate material misrepresentations to the Appellate Court, and allegedly arranged payments to the Judges from Gibson Dunn. Further, Gibson Dunn compounded its unbecoming behavior by withholding Memos unethically around Facebook Inc.'s price fixing, despite M.T.O. Counsel, Mr. Tung stating their existence in an in person conferral between Mr. Tung and the Plaintiff. This meeting was insisted upon by Mr. Tung, and the existence of the Memos was volunteered to the Plaintiff by Mr. Tung, and not directly requested.

Furthermore, it should be noted that the Plaintiff alleges obstructions, and bribery against the Court highest Officer, Chief Justice Roberts.  It is alleged that he received compensation from Gibson Dunn L.L.P. on a routine basis, and his clerk was hired into the Dallas office of Gibson Dunn on a quid pro basis, perhaps even in return for favors around this matter.  **Ending private records and conflict checks is a legal precedence, which would stop any Chief Justice of the Supreme Court from proceeding as a steward of our legal system.**  He was not appointed by the President of the United States, to rescue Gibson Dunn L.L.P. from its plead felonious conduct, and it is not his duty to damage small business owners so that incompetent counsel can collect absorbent fees, he has disgraced the Position, and himself.  **He should do the honorable action, here, and resign as a result of conflict checks and private records, being permanently lost from the law, and cooperate with any investigation into his honeymoon with Gibson Dunn Inc. personnel by appointed Special Independent Counsel to investigate.**  Such an abrogation of the Law is indecent, and no self-respecting Supreme Court Justice can justify doing favors, on a case that spoke so directly to the core foundation of legal principles.  Facebook Inc.'s triple conflicted representation, and plead felonious conduct, here, cannot be rewarded by any Court, which claims to be led by a reasonable legal mind.

Moreover, the Plaintiff also alleges that in addition to bribery, the U.S. Government also chose to end basic tenets of legal reasoning permanently, in order to retaliate and spite the Plaintiff for, dissension over the U.S. government's hijacking of the Plaintiff's life.

**Ironically, in the end, the inability for the U.S. Government to show Leadership, and unbias character, actually damaged the life of the Plaintiff, the Plaintiff's economic opportunity, and the Plaintiff's storied profession, far more than, any of the following: organized criminal, terrorist, or foreign government military actor acting in error.  The Judges and Leaders of Gibson Dunn on many levels are actually stronger threats than such terrorists and organized Criminals.**

When a Law Clerk in one of our Federal Courts finally proves to me that they are capable of applying statutory law, and not just ruling for a handicapped counselor, who will never hire them, as they themselves only have their respective job because of family contacts, I will applaud this profession once again.

Retrospectively, there are many Leaders who have proudly served our country, and have sustained physical damages, certainly more severe than those of the Plaintiff's.  The purpose of this action, here, is not to attempt to compete

against those sacrifices in any manner whatsoever, and we can only marvel at some of the heroics and sacrifices of many of the honest U.S. service people. Rather, this Suit emerges from the inability of the U.S. Courts to function independently, and the need for all Leaders of the U.S. government to understand that singular oligarchs cannot cannibalize historical professionals, and prey on small businesses. I also don't want handicapped nonsense, and opaque bribery, as seen in these matters, to ever happen again to any legal professionals or small business owners. **I did everything I could to protect Pepperdine law students, and I now intend to do everything I can to protect all current and future law students, the 9th Circuit, here, did everything they could to further their alleged own bribery scheme even in the wake of felonies and conflicts.** When our highest Judicial officer allegedly colludes, with untrained counselors at Gibson Dunn Inc. to end private records, systematic change is required immediately, even it comes at the expense of potential Constitutional erosions. *U.S. Constitution.*

## ARGUMENT.

### I.   Defendants have Allegedly Violated the Tort of Intentional Infliction of Emotional Distress.

The elements for the tort of *I.I.E.D.* are as follows: 1) conduct in question was, either, intention or reckless, 2) conduct was extreme and outrageous, 3) there was causal connection between conduct and emotional distress, and 4) emotional distress was severe. *Faulkner v. Dillon*, 92 F. Supp. 3d 493 (W.D. Va. 2015). *See also*, *Hartwell v. Southwest Chesser Company*, 276 F. Supp. 3d. 1188 (D.N.M. 2016). *St. John v. International Ass'n of Machinsts and Aerospace Workers*, 139 F. 3d 1214 (8th Cir. 1998). Moreover, such a Claim is not barred by the *Federal Tort Claims act*. *28 U.S.C.A. 2680.*

The U.S. Government, here, committed an, either, intentional, or, reckless act when its Military allegedly few over the house of a U.S. civilian and burned the Plaintiff with military grade thermal weapons, which use is suppose to be limited to military combat. The act being the flying and use of the weapon. Further, it also committed a reckless act in failing to communicate with Plaintiff, who was then a U.S. citizen, and follow procedures, after multiple known assassination attempts on his life. The first set of assassination attempts occurred in early 2008 in Malibu, CA. and then again in Australia shortly thereafter, as plead in the statement of facts.

The Plaintiff, here, suffered high levels of stress as a result of these specific acts. For instance, the Plaintiff was bedridden, here, with acid reflux for days after the initial assassination attempts, and endured bouts of vomiting, nausea, and

headaches. Additionally, the Plaintiff suffered insomnia, sensitivity to flickering of lights, inability to exercise, and severe chest pain, as a direct result of the U.S. government burning the Plaintiff with a special weapon from a military plane. The Plaintiff frequently attempted, here, to sleep in the corner of rooms on the floor, and with reflective materials which were not effective, during the three month period of the burning. Moreover, worse than the actual burning of the skin and extremities, was the anticipation at night of these attacks, which were cowardly and terrorist in nature. Such anticipation brought psychological terror to the Plaintiff, and the Plaintiff presently has adverse reactions to unknown sources of lights.

Moreover, the Plaintiff alleges that the causation of this emotional stress was the direct result of the irrational assassination attempts on the Plaintiff, and the alleged burning of the Plaintiff by military planes, using a classified weapon. This weapon specifically emits a silver rectangular square of light across the target before a thermal burning occurs which last for two to three seconds, and sends a burning sensation through the body and extremities, over about 20% of the body. The Plaintiff felt the burning primarily in the chest area, but was once burned only in the legs and bottom portion of the body, such an act was the causation, here, of the emotional distress. Additionally, the U.S. government by failing to communicate and follow procedures, after each of the assassination attempts,

detailed in the *Statement of Facts I*, here, also were the proximate cause for the physical and emotional discomfort experienced, including but not limited to: vomiting, extreme acid reflux, headaches, and sensitivity to unknown sources of light. Further, the Plaintiff suffered damages, here, both, from these stated physical afflictions, in addition to its effect on his ability to pursue a career in the law and investments.

Additionally, the Plaintiff, here, alleges that either, Gibson Dunn, Facebook Inc., or, its contracting affiliates, which will be named in discovery, placed video recording devices, in the bedroom of a family member's home, which the Plaintiff was resting in, and even alerted the Plaintiff to its presence, in responding to Plaintiff's actions audially, via stationing at a hotel in proximity to the residence. *18 U.S.C. Section 245*. Such a felonious violation, here, is reckless and outrageous, and intended to inflict physical distress. Further, such surveillance was the proximate cause of the distress, and actually caused distress, as it affected the Plaintiff's ability to enjoy privacy of abode, which is a basic right. *Id.* The Court, here, should assign liability for this tort to, both, the private and government actors.

Moreover, the U.S. Government also inflicted emotional distress, in failing to follow 9th Circuit procedure, and prematurely making, a 2 in 1 ruling, after Facebook Inc. had not responded to an *Appellate Motion.* The U.S. Government

was the proximate cause, in this instance, as the 9th Circuit published the improper defective premature Order, ending private records and conflict checks permanently.

## II.     Defendants have Allegedly Violated the Tort of Negligence.

A claim for negligence can be stated, in California, a Plaintiff must establish the following elements: (1) the defendant had a duty, or an "obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks," (2) the defendant breached that duty, (3) that breach proximately caused the plaintiff's injuries, and (4) damages.  *Coarles v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 70 Cal. Rptr. 3d 519, 530 (Ct. App. 2008)). *Cross Bros. v. Meat Packers Inc*. v. 705 2d. 682 (1983). (Government breached a duty in not communicating information and is actionable under the tort of negligent misrepresentation).  *City of Santa Barbara v. Sup. Ct.*, 41 Cal. 4th 747 (2007). (Government cannot contract out of gross negligence).  *Bass v. South Carolina Dept of Social Science*, 414 S.C. 558 (2015).

The alleged facts, here, meet the standards of negligence.  The U.S. Government has a Constitutional duty to protect all U.S. Citizens from physical harm, and economic harm from, either, physical criminal actions, or, even

electronic criminal actions – such as the takings of private records, which Gibson Dunn Inc. from the Plaintiff. *U.S. Constitution*. The U.S. Government breached this duty, here, when it failed to confer with the Plaintiff, on its unconsented incorporation into terrorist response strategies, when it failed to confer after multiple witnessed assassination attempts on the Plaintiff's life, and its burning of the Plaintiff using aerial warfare devices. Additionally, here, the U.S. Government also breached its duty, in allowing Gibson Dunn to end private records and conflict checks by allegedly bribing 9th Circuit Judges and Chief Justice John Roberts, with consideration for violating U.S. Statutory law. It also violated its duty, here, in allowing the Judicial Officers to meet with Alphabet Inc. and Gibson Dunn Inc.'s Counsels, who in this case were the same conflicted Counsel, without the Plaintiff's, either, presence, or, knowledge.

Moreover, the U.S. Government, here, further breached its duty and showed Negligence in failing to following any kind of procedure in the 9th Circuit as the alleged Bribed Judges, here, removed the *Assignment Order*, and issued a 2 in 1 pre-mature order for an *Appellate Motion*, which did not exist in the record, as its dismissive document. This came in conjunction with changing its *Order*, without notice in the Nike Inc. case, and upholding the felonious taking of an email, where Nike Inc.'s Counsel boasted about relations with the wife of the Plaintiff's friend. Further, the U.S. Government, here, can be held accountable for failing to

communicate information to Plaintiff, when such information concerned the well being and safety of the Plaintiff, and the U.S. Government's omissions are not shields to liability. *Cross Bros. v.*

Furthermore, the Plaintiff can demonstrate that these actions were the cause of stress and economic loss for the Plaintiff. The Plaintiff, here, was unable to recover on his tort, either, engage in business relations, or, live without fear of physical bodily harm, as a result of each, and every one of the U.S. Government's negligent acts. It is also important that the Court, here, understands that there are too many infractions, such as manipulating the Plaintiff's G.P.S. system while he was being pursued by Organized criminals, and allowing its Chief Justice to fraternize with Gibson Dunn to the point where he is unable to hold a Court, which can enforce a triple conflict and double digit felonies. The Court, here, can take the totality of all of these alleged actions, as a singular breach, which caused irreparable harm to the Plaintiff.

### III.     <u>Defendants have Allegedly Violated the Tort of Fraud on the Court.</u>

The elements for fraud are: either, a representation, or, concealment of fact, material to the transaction at hand, made falsely with knowledge of falsity or

recklessness as to whether it is true, intent to mislead, justifiable reliance, and a resulting injury. *FTCA, 28 U.S.C. §§ 2671-2680. Aero Fulfillment Services Corp. v. Oracle Corp.*, 186 F. Supp. 3d 764 (2016). (Business misrepresentation to be sufficient for the tort of Fraud). *See also*, *U.S. v. Ford Motor Co.*, 532 F. 3d 496 (6th Cir. 2008). First, Gibson Dunn Inc. and conflicted Facebook Inc. and Alphabet Inc., here, failed to disclose their respective contacts with Judicial officers at the District Court level, and Appellate Court levels, which resulted in the ending of private records, and conflict checks in U.S. case law. Further, these Defendants, here, also failed to disclosed payments to Mr. Barack Obama, and Ms. Hillary Clinton, despite being requested by the Plaintiff in writing, as both these Leaders were involved in the appointment process of the overseeing Judicial panel at the Appellate Court, and in the appointment of the District Court Judge.

Moreover, the failure to make these legal disclosures of the Judicial contacts, and of the hiring of the Judicial appointing officers, here, was a concealment of fact, and would both independently satisfy the first element. *Id.* Further, these omissions were done with purpose. The Plaintiff, here, had submitted the disclosure requests in writing, and the Defendant purposefully withheld the information in order to quell any challenge to the conflicted Judiciary.

Second, either, Gibson Dunn, or, Facebook Inc. contractors, or, both, allegedly hired Ms. Marjorie Roberts to impersonate Havensight Capital L.L.C.

Counsel and further their respective material misrepresentations to the Appellate Court, which speaks to the very essence of the element of Fraud. This was a material misrepresentation and impersonation of Counsel. The Defendants were the proximate cause of this action, and it caused harm to the Plaintiff, in its inability to recover damages. Third, either, Gibson Dunn, or, Facebook, here, allegedly feloniously accessed the Plaintiff's computer and stole this filing, before it was filed, in secession to already plead felonious taking of counsel communications. This act, is criminal in nature, as it is a stolen legal record, and the Defendants, here, were the proximate cause of such a stealing, as they took it off the Defendant's computer, and caused irreparable harm. *Id*.

Fourth, Gibson Dunn also failed to provide Memos around Facebook Inc.'s price fixing, which were in their respective possession. This is known, here, because Mr. Tung of M.T.O., which was the Firm of initial Counsel in this matter, disclosed that to the Plaintiff, in an in person conferral in M.T.O.'s office. *Plaintiff's Declaration*. Mr. Tung voluntarily disclosed this fact to Plaintiff, and the meeting was at Mr. Tung's absolute insistence. Thus, the Defendant, here, caused the Fraudulent act, by actively concealing the Memo, and this concealment caused harm, in the impairment of the Plaintiff's legal rights. The fact that Plaintiff has to pay $48.00 for parking, after Mr. Tung's assurance that the parking would be validated, is not at issue.

Further, this fraud caused harm to the Plaintiff, as the Appellate Court did not examine the felonious conduct of Facebook Inc. and Alphabet Inc., and did not default the Defendants as was required by Federal Statutory law. *18 U.S.C. Section 1030.* Thus, there was reliance and damages suffered as a result of these fraudulent failures to disclose of, both, alleged Judicial contacts, and the alleged hiring of Mr. Obama, and Ms. Clinton, either, by both, or, each of the conflicted Parties. There is inherent conflict, here, just in the disclosures of the hiring of both of them, and it is questionable whether removing conflict checks from case law, was a clever idea. Thus, the Court, here, should find that all of elements for the tort of fraud, have been satisfied.

Moreover, Facebook Inc. and Gibson Dunn Inc. failed to disclose its contacts with Chief Justice John Roberts, here, and the hiring of his clerk in a quid pro scheme, and political favors and persuasion offered to U.S. Government Leaders. This unethical compensation allegedly was provided to those U.S. Government Leaders, who advocated for the abolishment of private records and conflict checks, in return for campaign contributions, and the continued formation and operation of phantom companies in economically challenged States. Many of these companies hired the unemployed, who resided in Jurisdictions of Judicial Officers. Finally, there was causation and resulting injury, here, because the Plaintiff was unable to claim on its Torts, and the American People lost private

records in Federal U.S. Statutory law, and conflict checks within the legal system, as a result of Gibson Dunn's alleged fraudulent actions, here, and the U.S. Government's failure to take action against these alleged compromised Judicial officers.

Moreover, the Plaintiff, here, also independently alleges fraud against Alphabet Inc. and the United States Government, in working with U.S. Government agencies to restrict the Plaintiff's email correspondences, here, and limit his ability to form business relations with a variety of prospective entities. *Id*. This Act, here, alleges fraud in the representation that Alphabet Inc. was providing protected free speech communications, when in fact, it was allowing the U.S. government to surreptitiously restrict the sending of email correspondences by all correspondences, going to Government Agencies. Additionally, the Department of Defense, and Government Agencies posing, and impersonating the intended recipient of email correspondences, here, meets the very definition of a fraudulent act. This Act also was the causation of a resulting injury, as the Plaintiff was unable to make sales, network for jobs, and engage in other activities, which would lead to economic gain. Furthermore, causal injury, as a direct result of the Defendant's manipulating the Plaintiff's emails, in this instance, also occurred as the Plaintiff was unable to make personal connections with family and friends, and relevantly network.

Additionally, the Plaintiff alleges that the Defendants, here, have engaged in Fraud in failing to provide the Plaintiff with the concealed Facebook *Memo* about the defective nature of Facebook's pricing, which Mr. Tung of M.T.O. told the Plaintiff, while representing Facebook, and the *California Bar Orders to Settle*, in violation of Facebook Counsel's professional duty. The Defendant, here, were the proximate cause of the misrepresentation, in the omission of providing these files, and the Plaintiff conferred, with over 1,000 emails, and fifty phone calls, requesting that the legal compliance documents be provided to the Plaintiff.

Moreover, the U.S. Government has engaged in Fraud, as the Appellate Court Clerk wrote and signed an *Appellate Motion*, which is felonious and was duly entered into the public record, in 9th circuit matter *15-56607*. This is Fraud, here, as it is a material misrepresentation, as the Clerk attempted to represent herself as a Judge despite signing her own name on the Motion document, instead of that of a Judge. The Clerk was the cause of the fraudulent error, and it caused harm, as it led to the ending of private records and conflict checks, and impaired the legal rights of the Plaintiff.

Additionally, the U.S. Government, here, engaged in Fraud, when it entered the *Assignment Order*, and then removed from the public record, in 9th Circuit matter *18-56304. Federal Rule of Civil Procedure 60(d)(3).* This Act was fraudulent, and committed because the 9th Circuit Judges knew they had taken a bribe and

broken procedure, in order to prop of Facebook's stock. The Judicial Officers, here, have no respect for the Law, they simply are working on a very transparent pay to play scheme. The 9th Circuit Clerks or Judges were the proximate cause of this removal of the *Assignment Orders,* as they are the only ones with access to the 9th Circuit system. Further, this Fraudulent Act, here, caused irreparable harm, as it substantially impaired the rights of the Plaintiff.

Lastly, the Defendant has not provided the Plaintiff, here, with the *California Bar Orders to Settle*, which were sent to the Defendant for all three of the historically triple conflicted Clients. Ms. Linsley, and Mr. Twomey, here, counsel for all three trillion dollar companies at once, despite their interests all be adverse to each other, have decided simply to not confer on emails, and voicemails requesting these documents. Such an omission and act is fraudulent, and meets the legal definition of fraud. *Id.* Moreover, instead of fulfilling legal professional responsibilities, the Defendant, here, had more felonious contacts and parties with the Judges, which they knew to be illegal, but believe the legal process, here, to be a bribery quid pro scheme, and not a conferral between members of the California Bar. The Defendants, here, are the proximate cause of this misrepresentation, and this misrepresentation has caused harm as it impaired the rights of the Plaintiff, and irreparably damaged the integrity of the legal profession. The Plaintiff will serve this *Complaint* on the California Bar, and moves the California Bar to disbar all

58   *COMPLAINT*

Judges, and Counsels involved in these triple conflicted matters, who ended private records, and conflict checks permanently.

## IV.   Defendants have Allegedly Violated the Tort of Intentional Interference with Economical Prospective Advantage.

The Defendants, here, have allegedly committed the tort of *I.I.E.P.R.* and restricted the Plaintiff from making sales, obtaining employment, and enjoying general economic advancement.  The tort has the following elements: 1) The Plaintiff and a third party were in an economic relationship that probably would have resulted in an economic benefit to him Defendant knew about the relationship, 2) Defendant engaged in a wrongful conduct, 3) By engaging in this conduct defendant intended to disrupt the relationship or knew that the disruption was substantially certain to occur, 4) The relationship was disrupted, The Plaintiff was harmed as the result of the Defendant's conduct. *Limandri v. Judkins,* 52 Cal.App.4th 326, 340 (1997).  Further, the Statue governs bribery and paid consideration, in return for interference *California Penal Code 641.3* and any paid consideration for intentional interference with a business is prohibited. *Smith v. Pure Oil Co.,* 278 Ky. 430, 434 (Ky. 1939).  The Plaintiff, here, allegedly established economic relations with various National governments, via his

Company, and sought employment as an attorney, while he was conscripted into counter terrorist measures.

Specifically, the Plaintiff, here, attempted to make sales of consumer products, and build business relations with the following Governments: The People Republic of China, German, French, English, Canadian, Mexican, Japan, and India. All of these attempts to do business with these Governments were either, interfered via email interference by U.S. agencies, or, in person interference by Government actors, who redirected, and thwarted attempts by the Plaintiff to meet with the Trade Leaders. Often, such actions were accomplished under the guise of protecting a security clearance, when in actuality, this same kind of behavior would actually undermine the U.S. Government, in the form of the Ninth Circuit eventually taking bribes, and ending private records and conflict checks for a trillion dollar Defendant.

Thus, the element of attempting to establish trade relations which would lead to economic benefit, here, is met by the Plaintiff's pleading of attempting to call and email Government officials to effectuate sales of consumer products if they fail to send tits again, across business lines. *Id*. Further, the U.S. Government disrupted the relationship and intended to disrupt the relationship, here, when it interfered with Plaintiff communications, via coercing Alphabet Inc. into giving it access to Plaintiff's emails, and in redirecting prospective meetings with

Government trade officials of a plethora of foreign Governments. Finally, the element of here of injury and economic loss, here, is satisfied, as the Plaintiff alleges that he would have benefited from sales of his products, and potential trade between the Plaintiff and these named Governments.

Moreover, Gibson Dunn Inc. and the three conflicted Clients, here, allegedly bribed private Banking Officials, which will remain anonymous until the discovery period, in offering consideration, in return for the Banking Leadership to deny services and capital to the Defendant. Specifically, the Plaintiff witnessed, consultants for the Defendants, observing the meeting, between the Bankers, and the Plaintiff, which was both disconcerting, and bizarre. Further, the Defendant only could have arranged such bribes of private banking officials, if they had illegally accessed the Plaintiff's email. Thus, there was allegedly tortious and felonious interference, even before the act of bribery. *Id*. The Defendants, here, were the proximate cause, as it was, either, them, or, their hired contractors, who harassed our Bankers, and entered our email feloniously. There was actual disruption, here, as the Plaintiff was not able to list its private Company, on an exchange. The Plaintiff never divulged information about Customers and Capital Markets Bankers publicly, and only felonious entry into our email, could have produced such interference. Thus, the individual elements, here, were met.

Further, such conduct alleged, here, is not surprising, provided that these three conflicted Clients, plead the stealing of privileged attorney emails, and allegedly disseminated stolen legal files to the U.S. Government from Plaintiff's computer. Gibson Dunn's triple conflicted Counsel allegedly stole a draft of this very legal file from the Plaintiff's computer and shared it with their Clients, and feloniously divulged it to the U.S. Government. *Id.* Such conduct, here, is in direct violation of *18 U.S.C. Section 1030*, and it is questionable whether triple conflicted Counsel, should try and assert the bribery case in question, which legalizes the stealing of electronic records, and attempts to overturn this *Federal Statue.* We are unsure if the 9th Circuit Leadership understands the irreparable damage of ending private records, in order to allow a multi-million dollar Attorney to bill for her felonies.

This specific tortious action, here, was allegedly compounded by Facebook Inc. routinely harassing the Plaintiff's prospective Customers, across the World, ranging as far as the South Pacific, and the Plaintiff alleges that Customers were harassed, lied to, and provided with consideration, in order to ensure that the Plaintiff's business failed. On numerous occasions, prospective Clients bizarrely, either, broke off communications, or, a contracting Firm operated by the triple conflicted Clients, came in and attempted to bid on contracts that the Plaintiff was working on. This interference also spans indigenous groups that the Plaintiff

solicited for phone services, who then were hired as contractors by the conflicted Clients deliberately, in order to obliterate the Plaintiff's business. The Plaintiff sent voluminous warnings to the Defendant's Counsel, regarding the direct interference with prospective Customers, and all of the communications, were not responded to.

Intriguingly, the triple conflicted Counsel believes in not conferring, but constantly communicating and obfuscating potential business leads, after feloniously entering the Plaintiff's email, she has it the wrong way around, and I truly hope this Court, is more perspicacious than the bribed Court. We are also unsure whether the triple conflicted Counsel had intimated to certain Parties that they owned the Companies, which would be bizarre and felonious, as the conflicted Counsel had only won a personal judgment off of their bribes of the Judicial Officers. This fact needs to be investigated by the U.S. Attorney. The triple conflicted Clients, here, were the proximate cause of the interference as they contacted and in some instances hired our prospective Customers and Bankers, there was an economic relations, as we had commenced forming contractual relations, and these relations were disrupted by either, the transfer of consideration by the Defendants, or, the communications of false statements and misrepresentations. *Limandri v.* In conclusion, the Court should find intentional

interference with contractual relations, and impute liability to all three trillion

dollar Companies, via operation of law, as they were triple conflicted at the time.


## CONCLUSION.


The Jury should award the Plaintiff the requested damages in this matter for

all of the Defendant's tortious acts, which were: intentional, beyond egregious, and

now known. *Waits v. Frito-Lay Inc.,* 978 F. 2d 1093 (9th Cir. 1992).


## REQUEST FOR JURY TRIAL.


The Plaintiff requests a jury trial in this matter. *28 U.S. Code Section 1411.*


## REQUEST FOR DAMAGES AND PUNITIVE DAMAGES.


The Plaintiff requests that the Court moves on its own to request that the 9th

Circuit Appellate Court re-open 9th Circuit cases *No. 18-5603*, and *No. 15-56607*,

reinstate private records, and conflict checks, as a result of Defendant's hiring of

Panel Judicial appointees, in order to protect the rights of the public. Additionally,

a Jury should award $25,000,000 and any amount of punitive damages, which its deems judicious against each of the named Defendants.

Further, the U.S. Government should also appoint an independent Special Master immediately to oversee the initial closure and administration of the Ninth Circuit Court, until the U.S. government can determine which Judicial actors acted in concert with Facebook Inc., Nike Inc., and Gibson Dunn Inc. to end private records, and conflict checks. Finally, Congress should also empower this Special Master to proceed with prosecution of the Chief Justice of the United States, should it be determined that he violated the *Constitution of the United States of America*, and the Office of the Chief Justice, in allegedly assisting Gibson Dunn, with the ending of private records, and conflict checks, in return for pecuniary gain for, either, himself, or, Supreme Court clerks.

Respectfully submitted,

*/s/ Benjamin Woodhouse*
Benjamin Woodhouse esq.
2369 Kronprinsends Gade, Ste. #8
Charlotte, VI. 00801
805 478 1958
California Bar #261361

65    *COMPLAINT*

**EXHIBIT D**

## Disclosures

**A**. Please disclose all depositions and other discovery conducted in the pre-discovery period, including depositions of classmates, professors, military, prospective Customers, and Investment Bankers?  It is of no consequence if some of these individuals, either, misrepresented their respective identity, or, provided fictious names.


If you have disseminated this pre discovery to either, the U.S. Government, Alphabet Inc, or, any Party, please disclose that immediately.


**B.** Please disclose all contacts with this Court of any kind with any personnel.  The time, date, and nature of improper contact.


**C.** Please disclose if Gibson Dunn Inc. or any of its attorneys provided actual notice to Alphabet Inc. of the Complaint


**D**. Please disclose if you had actual notice of Facebook Director Mr. Jan Koum's purchase of a Malibu mansion estimated at $20MM for $100MM.


**E.** Please disclose if you have been ordered to settle in this matter.


**F.** Please disclose if you represent any Party that is not named but you have taken representation as they have a tangential relationship to Mr. Woodhouse and Havensight Capital L.L.C.  It does not have to be that we have a potential claim against them.

**G**. You own none of Havensight Capital L.L.C.'s assets, please disclose any potential sales, and representations of ownership?

**H.**  Please disclose all contacts with prospective Customers and Bankers, who breached our email feloniously, when the contact was and the nature of the contact, this pertains to conflicted Clients, Alphabet Inc. Gibson Dunn, and any contracting Firm associated with any of the referencing entities.